1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENDRIK BLOCK,<br><br>       Plaintiff,<br><br>    v.<br><br>CALIFORNIA-FRESNO INVESTMENT COMPANY, DBA BAD BUDS GAS AND CAR WASH, et al.,<br><br>       Defendants. | Case No. 1:22-cv-01419-JLT-SAB<br><br>ORDER VACATING APRIL 26, 2023 HEARING<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(ECF No. 11)<br><br>**FOURTEEN-DAY DEADLINE** |

Currently before the Court is Plaintiff Hendrik Block's ("Plaintiff") motion for default judgment, filed on February 24, 2023. (ECF No. 11.) No oppositions were filed and the deadline to do so has now expired. Accordingly, the Court finds this matter suitable for decision without oral argument. See Local Rule 230(g). Thus, the hearing set for April 26, 2023, will be vacated and the parties will not be required to appear at that time.

Having considered the moving papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following findings and recommendations recommending Plaintiff's motion for default judgment be DENIED.

///

///

1

# I.

## BACKGROUND

### A.    Procedural History

On November 3, 2022, Plaintiff filed this action against Defendants California-Fresno Investment Company ("CFIC"), doing business as Bad Buds Gas and Car Wash, and Cedar Plaza, Inc. ("Cedar Plaza") (collectively, "Defendants").  (ECF No. 1.)

The proof of service for Cedar Plaza indicates Plaintiff served Cedar Plaza with the summons and complaint on November 10, 2022, by personally serving Terry W. Chan, a "person authorized to accept service of process," at 1673 E. Brandon Lane, Fresno, California 93720. (ECF No. 4.)

The proof of service for CFIC indicates Plaintiff served James L. Shehadey, the "person authorized to accept service of process," with the summons and complaint on November 14, 2022, by substituted service on Tammy "Doe," described as "F, C, 35–45, 5'5–6'0, 160–190) – Person in Charge of Office," at 405 N. Palm Avenue, Fresno, California 93701.  (ECF No. 5.)

Neither Defendant responded to the complaint.  On December 6, 2022, Plaintiff requested default be entered against Cedar Plaza (ECF No. 6); default was entered the same day (ECF No. 7).  On January 4, 2023, Plaintiff requested default be entered against CFIC (ECF No. 8); default was entered against CFIC on January 5, 2023 (ECF No. 9).

Plaintiff filed the instant motion against Defendants on February 24, 2023.  (ECF No. 11.) A hearing on the motion is currently set for April 26, 2023.  No opposition to Plaintiff's motion has been filed.

### B.    Plaintiff's Allegations

The verified complaint asserts causes of action for violations of the Americans with Disabilities Act ("ADA"), California's Unruh Civil Rights Act (the "Unruh Act"), and denial of full and equal access to public facilities pursuant to California Health and Safety Code §§ 19953 *et seq.* against Defendants, the purported owners/operators/leasers of the facility Bad Buds Gas & Car Wash (the "Facility" or "Bad Buds") at 6777 North Cedar Avenue, Fresno, California 93710. (ECF No. 1 at 1–2, 4–8.)  Plaintiff alleges the Facility is open to the public, intended for non-

residential use, its operation affects commerce, and it is a "public accommodation" under 42 U.S.C. § 12181(7)(F), as it is a gas station.  (Id. at 2; ECF No. 11-1 at 3.)

Plaintiff alleges he is substantially limited in his ability to walk, and must use a cane, walker, wheelchair, or electric scooter for mobility.  (ECF No. 1 at 2.)  Plaintiff regularly travels to the area where the Facility is located.  (Id.)  He visited the facility on or about May 21, 2022, to purchase snacks.  (Id.)  During the visit, Plaintiff alleges he encountered barriers that interfered with and denied his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Facility.  (Id.)  More specifically, Plaintiff identifies the following barriers:

**a)  Designated accessible parking not properly identified**

> Plaintiff had difficulty locating the designated accessible parking stall in the Facility's parking lot.  The accessible parking stall was missing signage and had faded pavement markings … in violation of 1991 ADAAG § 4.1.2(5)(a).

**b)  Lack of accessible route from parking to Facility entrance**

> Plaintiff was not able to find an accessible route of travel from the accessible parking stall to the Facility entrance.  The parking stall and access aisle did not have a curb ramp that would allow Plaintiff using his wheelchair access onto the raised walkway … in violation of 1991 § ADAAG 4.6.3.

(Id. at 3; ECF No. 11-1 at 5.)  Plaintiff asserts the described barriers constitute noncompliance with the 1991 ADA Accessibility Guidelines ("1991 Standards") and/or the 2010 ADA Standards for Accessible Design ("ADAAG"), in violation of 42 U.S.C. § 12182(a), as well as California Civil Code § 51(f).[1]  (ECF No. 1 at 4–8; ECF No. 11-1 at 4–6.)  Plaintiff further alleges Defendant knew or should have known of the barriers, and that Defendant has the financial means to remove them but refuses to do so.  (ECF No. 1 at 3.)  Plaintiff claims the obviousness of the barriers is sufficient to establish discriminatory intent.  (Id. at 4.)

As a result of the aforementioned barriers, Plaintiff contends he is deterred from visiting the Facility because its goods, services, facilities, privileges, advantages, and accommodations

---

[1] The Court notes that, while the complaint asserts a third cause of action for denial of full and equal access to public facilities and alleges Defendants violated California's Health and Safety Code §§ 19955(a) and 19959, in addition to the Unruh Act, the motion for default judgment only specifically asserts an Unruh Act state law claim.  (Compare ECF No. 1 at 7–8 with ECF No. 11-1 at 6–7.)

were unavailable to him due to his physical disabilities and Plaintiff will return to the Facility once the barriers are removed.  (Id. at 3.)  Plaintiff seeks injunctive and declaratory relief, statutory damages, attorneys' fees, and costs.  (Id. at 8; ECF No. 11-1 at 6–8.)

## II.

## LEGAL STANDARD

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> > (A) conduct an accounting;
> >
> > (B) determine the amount of damages;
> >
> > (C) establish the truth of any allegation by evidence; or
> >
> > (D) investigate any other matter.

Id.

The decision to grant a motion for entry of default judgment is within the discretion of the

court. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment."). The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel, 782 F.2d at 1471–72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008). Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted). The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

### III.

### DISCUSSION

Before it may evaluate the Eitel factors to determine whether default judgment should be entered, the Court must first determine whether it properly has jurisdiction in this matter.

### A.    Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000). Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the

Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law."  <u>Republican Party of Guam v. Gutierrez</u>, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting <u>Franchise Tax Bd. v. Constr. Laborers Vacation Tr.</u>, 463 U.S. 1, 8–9 (1983) (citations omitted)).  "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  <u>Republican Party of Guam</u>, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the ADA of 1990, 42 U.S.C. §§ 12101, *et seq*.  Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331.  In addition, the Court may exert supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's related state law claims under the Unruh Act, California Civil Code §§ 51, *et seq.*, and Cal. Health & Safety Code §§ 19953, *et seq.*

### B. Jurisdiction Over Defendants CFIC and Cedar Plaza

1. <u>Legal Standards for Service of Process</u>

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  <u>See</u> <u>J & J Sports Prods., Inc. v. Singh</u>, No. 1:13-cv-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); <u>Penpower Tech. Ltd. v. S.P.C. Tech.</u>, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); <u>Mason v. Genisco Tech. Corp.</u>, 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").  Service of the summons and complaint is the procedure by which a court having venue and jurisdiction of the subject matter of the suit obtains jurisdiction over the person being served.  <u>Miss. Publ'g Corp. v. Murphree</u>, 326 U.S. 438, 444–45 (1946); <u>see</u> <u>Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail)</u>, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4.").

Service of a complaint in federal court is governed by Rule 4. "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." Direct Mail, 840 F.2d at 688 (quoting United Food & Com. Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)). However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.' " Direct Mail, 840 F.2d at 688 (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986)). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted). "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." SEC v. Internet Sols. for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir. 2007).

Both CFIC and Cedar Plaza are business entities, thus Rule 4 subdivision (h) is applicable here. Under Rule 4(h), a corporation, partnership, or other unincorporated association that is subject to suit under a common name must be served (A) in the manner prescribed by Rule 4(e)(1) for serving an individual, or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant. Fed. R. Civ. P. 4(h). Under Rule 4(e)(1), an individual may be served pursuant to state law. Fed. R. Civ. P. 4(e)(1).

California law sets forth requirements both as to who may be served (Cal. Code Civ. Proc. §§ 415.10–416.90), and the manner in which service on that person may be effected (Cal. Code Civ. Proc. §§ 416.10–415.95). As relevant here, service may be completed upon various "persons," including corporations (Cal. Code Civ. Proc. § 416.10), dissolved or charter forfeited corporations (Cal. Code Civ. Proc. § 416.20), joint stock companies or associations (Cal. Code Civ. Proc. § 416.30), unincorporated associations (Cal. Code Civ. Proc. § 416.40), and "persons not otherwise specified" (Cal. Code Civ. Proc. § 416.90).

///

///

7

### a. Corporations, Dissolved/Charter-Forfeited Corporations, and Joint Stock Companies/Associations

Service may be completed on a corporation by delivering a copy of the summons and complaint to: (1) the person designated as agent for service of process; (2) the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager a person authorized by the corporation to receive service of process; or (3) as authorized by provisions of California's Corporations Code §§ 1701, 1702, 2110, 2111, 3301–3303, or 6500–6504 (as in effect at the applicable time).  Cal. Code Civ. Proc. §§ 416.10(a)–(b), (d).

Service may be completed on a corporation that has forfeited its charter or been dissolved by delivering a copy of the summons and complaint to: (a) a person who is a trustee of the corporation and of its stockholders or members; or (b) as permitted under Cal. Corp. Code §§ 2011, 2114, or 3301–3303 or 6500–6500 (as in effect at the applicable time).  Cal. Code Civ. Proc. §§ 416.20(a)–(b).

Joint stock companies or associations may be served in the same manner as corporations and dissolved/charter-forfeited corporations.  Cal. Code Civ. Proc. § 416.30 (citing Cal. Code Civ. Proc. §§ 416.10, 416.20).

Unincorporated associations, by contrast, may be served by delivering a copy of the summons and complaint as follows: (a) if the association is a general or limited partnership, to the person designated as agent for service of process in a statement filed with the Secretary of State or to a general partner or the general manager of the partnership; (b) if the association is not a general or limited partnership, to the person designated as agent for service of process in a statement filed with the Secretary of State, or to the president or other head of the association, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the association to receive service of process; or (c) when authorized by Cal. Corp. Code § 18220, as provided by that section.  Cal. Code Civ. Proc. § 416.40.

As to the manner in which service may be completed, California law permits either

8

personal service (Cal. Code Civ. Proc. § 415.10) or substituted service (Cal. Code Civ. Proc. § 415.20).   As noted under Cal. Code Civ. Proc. § 415.20, substitute service on regular corporations, dissolved/charter-forfeited corporations, or joint stock companies/associations may be completed as follows:

> a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.   When service is effected by leaving a copy of the summons and complaint at a mailing address, it shall be left with a person at least 18 years of age, who shall be informed of the contents thereof …

Cal. Civ. Proc. Code § 415.20(a).

### b.    "Form Unknown" Business Organizations

Meanwhile, where a "form unknown" business organization is being served, Cal. Civ. Proc. Code § 415.95 provides service may be effected

> by leaving a copy of the summons and complaint during usual office hours with the person who is apparently in charge of the office of that business organization, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid, to the person to be served at the place where a copy of the summons and complaint was left ….

Cal. Civ. Proc. Code § 415.95.  However, the statute notes that this manner of service "is not valid for a corporation with a registered agent for service of process listed with the Secretary of State." Id.

### c.    "Persons Not Otherwise Specified"

Finally, California law permits service on "a person not otherwise specified … by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process."  Cal. Code Civ. Proc. § 416.90.  With respect to substitute service on "persons not otherwise specified," Cal. Code Civ. Proc. § 415.20 provides that, "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served,"

a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left …

Cal. Civ. Proc. Code § 415.20(b).

    2.   <u>Analysis</u>

    **a.**    **Service on Defendant Cedar Plaza, Inc.**

The business search page of the California Secretary of State website provides that Cedar Plaza is a corporation in good standing, with its principal place of business and mailing address currently at 7178 N. Fruit Ave, #124, Fresno, California 93711.[2]  Business search and Statement of Information History for Cedar Plaza, Inc., Cal. Secretary of State, https://bizfileonline.sos.ca.gov/search/business (last visited Apr. 19, 2023).  However, the statement of information history page indicates that, prior to January 27, 2023, the principal place of business and mailing address for Cedar Plaza was located at 1673 E. Brandon Ln, Fresno, California 93720.  <u>Id.</u>  The Secretary of State website further indicates the agent for service of process is Terry W. Chan, located at the same business address.  <u>Id.</u>

Here, the proof of service for Cedar Plaza indicates Plaintiff served Cedar Plaza with the summons and complaint on November 10, 2022, by personally serving Terry W. Chan, a "person authorized to accept service of process," at 1673 E. Brandon Lane, Fresno, California 93720.

---

[2]  Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein.  <u>See</u> <u>Daniels-Hall v. Nat'l. Educ. Ass'n</u>, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information on websites of two school districts because they were government entities).  Specifically, Courts routinely take judicial notice of information contained in the California Secretary of State's website.  <u>See, e.g.</u>, <u>Gerritsen v. Warner Bros. Ent. Inc.</u>, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (profiles on California Secretary of State website proper for judicial notice); <u>see also</u> <u>Applied Underwriters, Inc. v. Lara</u>, 530 F. Supp. 3d 914, 924 (E.D. Cal. 2021), <u>aff'd on other grounds</u>, 37 F.4th 579 (9th Cir. 2022), <u>cert. denied</u>, 143 S. Ct. 748 (2023) (judicially noticing business information from Nebraska Secretary of State website).

1    (ECF No. 4.)   The proof of service does not indicate that the summons and complaint were

2    thereafter also mailed to Cedar Plaza.

3        As previously noted, Rule 4(h)(1)(B) requires both personal service on an agent for

4    service of process and subsequent mailing to the defendant.   Here, although the agent was

5    personally served, the proof of service does not indicate that a copy of the summons and

6    complaint was thereafter also mailed to Cedar Plaza.   (See ECF No. 4); see also Fed. R. Civ. P.

7    4(h)(1)(B).   Therefore, service was not properly effected under Rule 4(h)(1)(B).

8        The Court next turns to Rule 4(h)(1)(A), which permits personal service under Rule

9    4(e)(1) for serving an individual, i.e., by complying with state law requirements.   The Court finds

10    personal service was properly effected under California's provisions for service on a corporation,

11    Cal. Code Civ. Proc. §§ 416.10(a), which do not require subsequent mailing of the summons and

12    complaint where, as here, the agent of service of process is personally served.   Cal. Code Civ.

13    Proc. §§ 416.10(a), 415.10.

14        Accordingly, the Court finds service was properly effected on Defendant Cedar Plaza.

15        **b.**      **Service on Defendant California-Fresno Investment Company**

16        The business search page of the California Secretary of State website provides that CFIC

17    is a corporation in good standing, with its principal place of business at 405 N. Palm Ave.,

18    Fresno, California 93701 and mailing address at P.O. Box 2625, Fresno, California 93745.

19    Business search for California-Fresno Investment Company, Cal. Secretary of State,

20    https://bizfileonline.sos.ca.gov/search/business (last visited Apr. 19, 2023).   The Secretary of

21    State website further indicates the agent for service of process is James L. Shehadey, located at

22    the same business address.   Id.

23        As previously noted, the proof of service for CFIC indicates Plaintiff served James L.

24    Shehadey, the "person authorized to accept service of process," with the summons and complaint

25    on November 14, 2022, by substituted service on Tammy "Doe," described as "F, C, 35–45, 5'5–

26    6'0, 160–190) – Person in Charge of Office," at 405 N. Palm Avenue, Fresno, California 93701.

27    (ECF No. 5 at 2.)   The affidavit of service further notates as to the "Manner of Service," that

28    service was completed

1    [b]y leaving the copies with or in the presence of Tammy "Doe" …
2    (business) a person at least 18 years of age apparently in charge of
     the office or usual place of business of the person served.  I [the
3    process server] informed him/her of the general nature of the
     papers.  I caused the copies to be mailed (if applicable)."

4    (Id. at 2.)  Also included is a declaration of mailing, which indicates a copy of the summons and

5    complaint was mailed to CFIC/James L. Shehadey on November 17, 2022, at the same 405 N.

6    Palm Ave. address.  (Id. at 3.)  As to the manner of substituted service, the affidavit states

7    substituted service was completed "under section CCP 415.20(a) or 415.20(b) or FRCP

8    4(e)(2)(B) or FRCP 4(h)(1)(B)."  (Id.)

9        On the face of the proof of service, it appears to this Court that Plaintiff did not

10   substantially comply with Rule 4.  Plaintiff did not effect personal service on the agent for service

11   of process, James L. Shehadey, but instead attempted substituted service for Mr. Shehadey on a

12   "Doe" individual.  This does not comply with Rule 4(h)(1)(B), which only permits service on the

13   designed agent for service of process.  Accordingly, the Court turns to state law to determine

14   whether Plaintiff properly effected service pursuant to Rule 4(h)(1)(A) (permitting service on a

15   person pursuant to Rule 4(e)(1), which requires compliance with state law).

16       Because CFIC is a general corporation, registered with the California Secretary of State,

17   service on CFIC is governed by Cal. Code Civ. Proc. § 416.10.[3]  Under Cal. Code Civ. Proc. §

---

18   [3] There are four methods by which service may be effected on a corporation under Cal. Code Civ. Proc. § 416.10.
     Here, the only applicable method of service under § 416.10 is set forth under subdivision (a) (designed agent for
19   service of process).  See Cal. Code Civ. Proc. § 416.10(a).  Subdivision (b) is inapplicable because James Shehadey
     is the designated agent for service of process, not an executive officer of CFIC.  See Bakersfield Hacienda, Inc. v.
20   Superior Ct. In & For Kern Cnty., 199 Cal. App. 2d 798, 803–05 (Ct. App. 1962) (finding "utter failure to show any
     diligence whatsoever in attempting to serve a corporate defendant by personal service on one of [its] officers" where
21   service was only attempted on the general manager of the motel and not the general manager of the corporation); see
     also TMX Logistics, Inc. v. FF Trucking, Inc., No. CV 14-00873 PSG (ASx), 2014 WL 12691618, at *1–2 (C.D.
22   Cal. Sept. 5, 2014) ("However, neither the declaration nor the relevant proof of service indicates that (1) Eduardo
     Fernandez, agent of FF Logistics, was personally served; or that (2) Celeste Aguila is 'an officer, a managing or
23   general agent, or any other agent authorized by appointment or by law to receive service of process' on behalf of FF
     Logistics."); Schagene v. Northrop Grumman, No. 11 CV 1642 AJB NLS, 2012 WL 216531, at *2–3 (S.D. Cal. Jan.
24   24, 2012) ("Under Rule 4(h)(1)(B), valid service of process requires 'delivering a copy of the summons and of the
     complaint to an officer, a managing or general agent, or any other agent authorized by law to receive
25   service of process.' ... Even if Ms. Davis had been employed by Defendant as of the date of the attempted service of
     process, she was not an officer, managing or general agent, or an agent authorized by law to receive service of
26   process on behalf of Defendant.").  Subdivision (c) is inapplicable because the Facility is a gas station and there is no
     indication that CFIC, the purported corporate defendant owner/operator of the Facility, is a bank.  See Cal. Code Civ.
27   Proc. § 416.10(c).  The Court finds subdivision (d) is also inapplicable here because there is zero indication on the
     service affidavit, or anywhere in Plaintiff's moving papers that service on Tammy Doe was completed in compliance
28   with any of the identified provisions of the Corporations Code.  See Cal. Code Civ. Proc. § 416.10(d).  Accordingly,
     the Court's analysis herein shall be limited to subdivision (a) of § 416.10.

12

416.10(a), James L. Shehadey is the proper party to be served, as designated agent for service of process for the defendant corporation CFIC.  Plaintiff thus complies with Cal. Code Civ. Proc. § 416.10(a) to the extent the proof of service indicates Mr. Shehadey was the party served.  (ECF No. 5 at 2); Cal. Code Civ. Proc. § 416.10(a).  Because Plaintiff did not effect personal service on Mr. Shehadey, however, the Court evaluates whether Plaintiff complied with the substitute service requirements set forth under Cal. Code Civ. Proc. § 415.20 (substitute service on a corporation).  The Court finds Plaintiff did not comply, as follows.

      (i.)    <u>Cal. Code Civ. Proc. § 415.20(a)</u>

As previously noted, Cal. Code Civ. Proc. § 415.20(a) requires service be effected during usual office hours in the office of the person to be served, with a person at least 18 years of age, who is apparently in charge, and who is informed of the contents of the service documents, which must also be subsequently mailed to the same address.  Plaintiff appears to have complied with the usual office hours requirement, as process was served at 9:09 a.m., on Monday, November 14, 2022.  The age requirement also appears to have been complied with, as the proof of service notes "Tammy Doe" appeared to be in the age range of 35–45 years old.  (ECF No. 5 at 2.)

The Court is not persuaded, however, that service was effected in compliance with the "apparently in charge" requirement.  Here, the service affidavit's characterization of Ms. Doe as a "Person In Charge of Office," and its statement that Ms. Doe was "apparently in charge of the office or usual place of business of the person served" (<u>id.</u>) are wholly conclusory (and appear boilerplate).[4]  The affidavit does not include any facts to support the process server's determination that Ms. Doe was "apparently in charge of the office" at 405 N. Palm Ave, such as Ms. Doe's job title, or any facts describing how substitute service was completed.  Thus, it remains unclear how the process server was able to confirm that Ms. Doe was the person "apparently in charge" of the office—rather than being, for example, a temporary employee, an

---

[4] Similarly, the Court notes the boilerplate language that service was made pursuant to "section CCP 415.20(a) *or* 415.20(b) *or* FRPC 4(e)(2)(B) *or* FRCP 4(h)(1)(B) … (*if applicable*)" (<u>see</u> ECF No. 5 at 3 (emphasis added)) does not actually identify which rule or statute was followed in order to establish that substitute service was, in fact, accomplished in compliance with any of the aforementioned legal authorities.  The Court discusses whether service was effected pursuant to Cal. Code Civ. Proc. §§ 415.20(a) or (b), or Fed. R. Civ. P. 4(h)(1)(B) herein; however, the Court notes Fed. R. Civ. P. 4(e)(2)(B)—service by leaving a copy of the summons and complaint at an individual's home—is plainly inapplicable here.

intern, a clerk, or even a visitor at the office.  See Floyd v. Saratoga Diagnostics, Inc., No. 20-cv-01520-LHK, 2020 WL 3035799, at *3 (N.D. Cal. Jun. 5, 2020) ("John Doe refused to identify himself, and thus Plaintiff was unable to ascertain whether John Doe was 'apparently in charge,' as required for substitute service to be effective under Cal. Code Civ. Proc. § 415.20(a) [substitute service on natural person]."); see also Coach Inc. v. Envy, No. 1:11-cv-1029 LJO GSA, 2012 WL 78238, at *2–3 (E.D. Cal. Jan. 10, 2012) ("Here, the proof of service indicates that Envy was served by leaving the summons at Defendant's place of business with 'Ninehra Babazade Ehsaralahn-store clerk (E IND., F., 21, BLK, 5'4 130 lbs).' ... There is no indication that the store clerk is authorized to receive service under F. R. Civ. P. 4(h).").  Nor has Plaintiff provided additional evidence in support of such a contention.

Furthermore, because the process server was unable to so much as ascertain Ms. Doe's identity, the Court similarly cannot conclude that Ms. Doe was "informed of the contents" of the service documents.  The process server offers only boilerplate and conclusory statements that service was effected "[b]y leaving the copies *with or in the presence of* Tammy 'Doe,' " and "I informed *him/her* of the general nature of the papers."  (ECF No. 5 at 2 (emphasis added).)  Indeed, no facts are proffered to show that a conversation occurred between Ms. Doe and the process server, and the Court is skeptical that much of a conversation did occur, in light of the fact that Ms. Doe refused to provide even her name.  Further, no facts are proffered to demonstrate Ms. Doe actually understood the significance of the documents being handed to her, or that she was required to forward the documents to Mr. Shehadey.  Yet, "[t]his requirement is critical because if [the person who is "apparently in charge"] did not know or understand the significance of the documents that [the process server] handed him, the documents may have ended up in a junk pile or recycling bin, rather than in [the defendant's] hands."  Bouyer v. 603 San Fernando Rd., LLC, No. CV-20-3853-MWF (PVCx), 2020 WL 7711840, at *2 (C.D. Cal. Nov. 2, 2020).  "For substituted service to be reasonably calculated to give an interested party notice of the pendency of the action and an opportunity to be heard, service must be made upon a person whose relationship to the person to be served makes it more likely than not that they will deliver process to the named party."  Produce v. Cal. Harvest Healthy Foods Ranch Mkt., No. C-

11-04814 DMR, 2012 WL 259575, at *3 (N.D. Cal. Jan. 27, 2012) (internal quotation marks, alteration, and citations omitted).  "[I]f service [is] improper, that may well explain the failure of a defendant to appear in a lawsuit." Folkmanis, Inc. v. Uptown Toys LLC, No. 18-cv-00955-EMC, 2018 WL 4361140, at *2 (N.D. Cal. Sep. 13, 2018) (internal quotation marks and citation omitted).

Finally, the Court is wary, for the reasons discussed, of the proffered service on a Doe individual.  See Dytch v. Bermudez, No. 17-cv-02714-EMC, 2018 WL 2230945, at *3 n.2 (N.D. Cal. May 16, 2018) ("Rather than re-serve the complaint, Plaintiff filed a revised proof of service from the process server which recites, in a formulaic and conclusory fashion, that John Doe was 'apparently in charge.'  The affidavit lacks factual detail.  It does not identify the particular person served ... Courts are also wary of proofs of service that do not identify on whom service was made because 'if no ... receiving individual is specified on the return of service, a movant [to set aside default judgment] has little or no basis on which to challenge the alleged service of process.' ") (quoting Homer v. Jones-Bey, 415 F.3d 748, 754 (7th Cir. 2005)) (bracketed alteration in original).

Accordingly, the Court concludes service was not properly effected pursuant to Cal. Code Civ. Proc. § 415.20(a).

(ii.)    Cal. Code Civ. Proc. § 415.20(b)

The Court notes the boilerplate service affidavit indicates service was completed pursuant to "section CCP 415.20(a) or 415.20(b) or FRPC 4(e)(2)(B) or FRCP 4(h)(1)(B) …."  (See ECF No. 5 at 3 (emphasis added).)  In an abundance of caution, the Court briefly addresses service under § 416.10(b): in short, service is noncompliant under subdivision (b) for two reasons.

First, as previously discussed, § 415.20(b) governs the manner of service when service is to be effected on "the person to be served, as specified in Section 416.60 [minors], 416.70 [wards and conservatees], 416.80 [political candidates], or 416.90 ['persons not otherwise specified']." Cal. Code Civ. Proc. § 415.20(b).  It is undisputed that CFIC is a corporation, and not a minor, ward/conservatees, political candidate, or "person not otherwise specified."  Hence, it is subdivision (a)—which governs service on corporations—and not subdivision (b) of § 415.20

1  which is applicable in the instant matter.

2  Second, even assuming, arguendo, subdivision (b) governs here, the service affidavit does

3  not indicate the service requirements under § 415.20(b) are met.   As previously noted, §

4  415.20(b) requires service be effected via substituted service only "[i]f a copy of the summons

5  and complaint cannot with reasonable diligence be personally delivered to the person to be

6  served"; furthermore, to the extent applicable here, § 415.20(b) requires the summons and

7  complaint be left (1) at the person's usual place of business, (2) with a person apparently in

8  charge, who is (3) at least 18 years old and (4) informed of the contents of the service documents,

9  and (5) copies must also be mailed to the same address.  Cal. Code Civ. Proc. § 415.20(b).

10  For the same reasons previously discussed, the boilerplate and conclusory language in the

11  service affidavit is insufficient to establish the "apparently in charge" and "informed of the

12  contents" requirements.   Furthermore, the Court notes the service affidavit is devoid of any

13  proffers of due diligence.  "[T]he burden is upon the plaintiff to show reasonable diligence to

14  effect personal service and each case must be judged upon its own facts." Evartt v. Super. Ct., 89

15  Cal. App. 3d 795, 801 (Cal. Ct. App. 1979).  "Although there is no established formula for

16  reasonable diligence, two or three attempts to personally serve defendant at a 'proper place'

17  ordinarily qualifies as 'reasonable diligence.' " Johnson v. Bozorghadad (Bozorghadad), No. 17-

18  cv-06536-HSG, 2020 WL 1245122 (N.D. Cal. Mar. 16, 2020), at *3 (citation, internal quotation

19  marks, and alteration omitted).  Here, nothing in the service affidavit indicates the process server

20  made any prior attempts to personally serve Mr. Shehadey before resorting to substituted service,

21  nor does the affidavit assert any other facts demonstrating reasonable diligence.  Thus, reasonable

22  diligence is not established.  Cal. Civ. Proc. Code § 415.20(b); Evartt, 89 Cal. App. 3d at 801;

23  Bozorghadad, 2020 WL 1245122, at *3.   Accordingly, the Court concludes service was not

24  properly effected pursuant to Cal. Code Civ. Proc. § 415.20(b).

25  Had CFIC been adequately served, it is possible it could have answered and potentially

26  raised a meritorious defense.  See Folkmanis, Inc., 2018 WL 4361140, at *2.  On this record,

27  however, the Court finds service is not adequate as to Defendant CFIC.

28  In sum, the Court finds service was properly effected on Defendant Cedar Plaza, but

16

service is not adequate as to Defendant CFIC. Accordingly, the Court recommends denying Plaintiff's motion for default judgment without prejudice for inadequate service of the summons and complaint with respect to Defendant CFIC, but shall proceed to consideration of whether the Eitel factors would otherwise weigh in favor of granting Plaintiff's motion for default judgment as to Defendant Cedar Plaza.

### C. Evaluation of the Eitel Factors in Favor of Default Judgment

For the reasons discussed herein, the Court finds that consideration of the Eitel factors weighs against granting default judgment.

#### 1. Possibility of Prejudice to Plaintiff

The first factor considered is whether Plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012). Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted because Plaintiff does not have any other way to recover against Defendants. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014). This factor weighs in favor of default judgment against Defendant Cedar Plaza.

#### 2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). As mentioned, the complaint asserts claims under the ADA, the Unruh Act, and the California Health and Safety Code. Plaintiff's motion addresses only the claims for violation of the ADA and the Unruh Act, however, which are analyzed herein.

The Court previously summarized the allegations contained in the operative complaint and supporting documents that were submitted in support of the motion for default judgment. The Court incorporates Section I here by way of reference.

a.   **ADA**

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation.  42 U.S.C. § 12182(a).  "Discrimination" is defined as a failure to make reasonable modifications in policies, practices, or procedures, when modification is necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."  Id. § 12182(b)(2)(A)(ii).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability."  Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).  Facilities include "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."  28 C.F.R. § 36.104.  Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable."  Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

A private party is only entitled to injunctive relief under Title III of the ADA, however, the ADA gives the court discretion to award attorney fees to the prevailing party.  Molski, 481 F.3d at 730.

(i.)   Whether Plaintiff is Disabled Within the Meaning of the ADA

Plaintiff must allege that he is disabled under the ADA.  Molski, 481 F.3d at 730.  The ADA defines disability as "a physical or mental impairment that substantially limits one or more

major life activities." 42 U.S.C. § 12102(1)(A).  Major life activities include walking, standing, and hearing.  42 U.S.C. § 12102(2)(A).  An individual who is substantially limited in his ability to walk is disabled under the ADA.  42 U.S.C. § 12102.

Plaintiff alleges that he is substantially limited in his ability to walk, and uses a wheelchair or cane for mobility.  (ECF No. 1 at 2.)  Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established this element of his ADA discrimination claim.

(ii.)    Whether Defendant Owns, Leases, or Operates a Place of Public Accommodation

Plaintiff must allege each Defendant "owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a); Molski, 481 F.3d at 730.

(1)    Place of Public Accommodation

As an initial matter, the Court finds the Facility, Bad Buds Gas & Car Wash, is a place of public accommodation.  This is supported by Plaintiff's allegations (ECF No. 1 at 3; see also ECF No. 11 at 3), and the ADA, which provides that a "gas station" is considered a public accommodation.  42 U.S.C. § 12181(7)(F).

(2)    Owns, Leases, or Operates

The Court is not persuaded, however, that Plaintiff has sufficiently asserted well-pleaded facts or submitted evidentiary support for the legal conclusion that Defendant Cedar Plaza owns, leases, or operates the Facility so as to be a properly named Defendant in this action.

Plaintiff alleges that Cedar Plaza owns, operates, and/or leases the Facility.  (ECF No. 1 at 2; ECF No. 11-1 at 6)  In support of this allegation, Plaintiff submits a grant deed relating to real property in the City of Fresno, which Plaintiff contends proves that the Facility is located on the property identified in the grant deed, and that Cedar Plaza owns the property upon which the Facility is located.  (ECF No. 11-1 at 6; Moore Decl. ¶ 14, ECF No. 11-2; Ex. D (grant deed), ECF No. 11-3 at 10–11.)

The grant deed, recorded on May 30, 1980 (Ex. D, ECF No. 11-3 at 11), indicates the Chan Investment Company granted the real property to Cedar Plaza, Inc. on or around May 22, 1980 (see id.).  The grant deed describes the subject real property, located in the City of Fresno,

1  Fresno County, as "[t]hat portion of the Northeast ¼ of Section 2, Township 13 South, Range 20

2  East, Mount Diablo Base and Meridian, according to the U.S. Government Township Plats, more

3  particularly described as follows …. [describing perimeter of plat by distances and coordinates]."

4  (Id.)  Thus, the grant deed does not include any street address, but instead describes the real

5  property by distances, degrees, and coordinates as recorded in the Official Records of Fresno

6  County.  (See id.)  No further documents or explanation are provided to establish a connection

7  between the property described in the grant deed and Bad Buds Gas & Car Wash, located at 6777

8  North Cedar Avenue, Fresno, California 93710.   Thus, the Court finds Plaintiff has not

9  established that Bad Buds Gas & Car Wash is located on the land described in the attached grant

10 deed.  See Gilbert v. Shahi Assocs., Inc., No. 1:21-cv-01375-DAD-SAB, 2022 WL 1557162, at

11 *8–10 (E.D. Cal. May 17, 2022) (finding plaintiff failed to establish ownership based on same

12 lack of connection between grant deed and postal address), report and recommendation adopted

13 in part, rejected in part, 2022 WL 3908549 (E.D. Cal. Aug. 30, 2022) (adopting findings related

14 to property ownership); Trujillo v. Gogna, No. 1:22-cv-00707-JLT-SAB, 2023 WL 2301717, at

15 *9–10 (E.D. Cal. Mar. 1, 2023) (same), report and recommendation adopted in full, No. 1:22-cv-

16 00707-JLT-SAB (E.D. Cal. Mar. 27, 2023); cf. Johnson v. Fernandez, No. 5:21-cv-04114-EDJ,

17 2022 WL 2829883, at *5 (N.D. Cal. Jul. 20, 2022) (public records at Dkt. No. 35-7, which

18 expressly included business address as well as APN of property, sufficient to establish ownership

19 of property by defendants in ADA case).

20         Furthermore, even if the property on which the Facility is located and that described in the

21 grant deed preponderate to be one and the same, the Court cannot conclude from the grant deed

22 that Cedar Plaza is the current owner of the real property identified in the deed because the grant

23 occurred on or around May 22, 1980, but no evidence was submitted showing that the property

24 continued to be owned by Cedar Plaza at present or at times relevant to this litigation.  Thus,

25 Plaintiff has not established the Facility is located on the real property described in the grant

26 deed; nor has he established that Cedar Plaza continued to remain owner of the real property

27 identified in the grant deed after 1980 and at all times (in 2022–2023) relevant to the instant

28 litigation.

Finally, the Court notes Plaintiff produced a copy of the California Department of Alcoholic Beverage Control ("ABC") report, dated February 23, 2023, for a business named "California Fresno Oil Co.," located at 6777 N. Cedar Ave., Fresno, California 93710.  (Moore Decl. ¶ 16; Ex. F, ECF No. 11-3 at 14–17.)  The report does not reference Bad Buds Gas & Car Wash, but is located at the same address as Bad Buds.  (Ex. F, ECF No. 11-3 at 15.)  While it is possible California Fresno Oil Co. and Bad Buds are one and the same, such information is not evident from the ABC report or any of the evidence submitted by Plaintiff.  For example, as the report is dated February 23, 2023, subsequent to the relevant times identified in the complaint, it is equally possible that California Fresno Oil Co. is a new facility that has replaced Bad Buds.  Finally, the report expressly states CFIC, and not Cedar Plaza or any other person or entity, is the "Primary Owner" of the business "California Fresno Oil Co."  (Id.)  Accordingly, the ABC report does not establish Cedar Plaza owns, leases, or operates the Facility.

On this record, the Court cannot conclude the pleadings or supporting evidence show Defendant Cedar Plaza "owns, leases, or operates" the Facility so as to be a properly named Defendant in this action.

Plaintiff's argument that the Court must accept his allegation of ownership as true is conclusory and unpersuasive.  Without further explanation, Plaintiff cites to TeleVideo Systems, Inc. v. Heidenthal and Geddes v. United Financial Group, for the general statement that "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  (See ECF No. 11-1 at 2, 6); TeleVideo Sys., Inc., 826 F.2d at 917 (quoting Geddes, 559 F.2d at 560).  Plaintiff's reliance on TeleVideo and Geddes, however, is misplaced.  As noted in the slightly more recent Ninth Circuit ruling, DIRECTV, Inc., "a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  DIRECTV, Inc., 503 F.3d at 854 (internal quotation marks and citations omitted).

In DIRECTV, Inc., the Ninth Circuit found DIRECTV's allegation that the appellees "knowingly manufactured, assembled, sold, distributed, or modified an electronic, mechanical or other device or equipment knowing, or having reason to know, that the device or equipment is

used primarily in the assistance of the unauthorized decryption of satellite programming, or direct-to-home services, or is intended for any other prohibited activity," which merely parroted the language of the statue were not well-pleaded facts, but simply legal conclusions.  Id.  As such, the allegation was not deemed admitted through default, and the district court's refusal to grant default judgment was affirmed on the basis that the appellant had failed to state a claim. Similarly here, Plaintiff's allegation regarding ownership and operation of the Facility is a legal conclusion that must be established through the pleadings.  See id.; see also Shanghai Hai Bi Cultural Media Co., Ltd v. Pac W. Distrib. Corp., No. CV 13-3620-CBM(Ex), 2015 WL 13918988, at *3 (C.D. Cal. Jan. 14, 2015) (in trademark case, denying default judgment based on finding that the plaintiff failed to adequately allege ownership of the trademark where it merely parroted the language of the law); U.S. v. RiverCliff Farm, Inc., No. 3:16-CV-1248-SI, 2017 WL 3388172, at *2 (D. Or. Aug. 7, 2017) (denying original default judgment motion due to failure to establish ownership of property in which quiet title action was pending).  For the reasons previously discussed, the Court finds the pleadings and public records submitted by Plaintiff do not demonstrate Cedar Plaza owns or operates the property on which the Facility exists. Plaintiff's conclusory statement does not refute the Court's finding.

Accordingly, taking only the well-pleaded allegations as true for purposes of default judgment (and not unsupported conclusions of law), DIRECTV, Inc., 503 F.3d at 854, the Court finds Plaintiff has not sufficiently alleged Defendant Cedar Plaza owns or operates the Facility (Bad Buds Gas & Car Wash), which is a place of public accommodation.  Plaintiff has therefore failed to establish this element of his ADA claim as asserted against Cedar Plaza.  On this basis, the Court finds granting default judgment against Defendant Cedar Plaza is inappropriate.

(iii.)   Whether Plaintiff Was Denied Public Accommodations Because of His Disability, due to an Architectural Barrier Prohibited Under the ADA

(1)    Whether Denial of Access Was Due to Disability

Plaintiff must allege and prove that he was denied public accommodations by a defendant because of his disability.  Molski, 481 F.3d at 730.  Here, Plaintiff alleges it was difficult for him to locate the designated accessible parking in the Facility's lot because it was missing signage and

had faded pavement markings that were barely visible.  (ECF No. 1 at 3.)  Further, Plaintiff alleges he could not find an accessible route to the Facility entrance from the designated accessible parking stall because the parking stall and access aisle were not connected to any curb ramp that would allow access onto the raised walkway.  (Id.)  Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established he was denied access to the Facility due to his disability.

(2)      Architectural Barrier

Congress entrusted the Attorney General with promulgating the implementing regulations for Title III.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") in 1991.  Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out the technical structural requirements of places of public accommodation and are applicable during the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).  "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines."  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011).

Plaintiff proffers that because no discovery has occurred, he does not know if the Facility was constructed or had any alteration done after March 15, 2012, and therefore will apply the 1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the Facility.  (ECF No. 11-1 at 4; see also ECF No. 1 at 3–4.)  However, Plaintiff submits—and the Court agrees—that the 2010 Standards now in effect will govern any injunction which issues, since the remedial work will be undertaken after March 15, 2012.  (ECF No. 11-1 at 4.)

As noted herein, Plaintiff alleges he could not easily find the accessible parking stall, and thereafter was unable to reach the raised walkway because there was no connecting ramp from the accessibility aisle to the raised walkway.  Plaintiff maintains these barriers violate 1991 ADAAG §§ 4.1.2(5)(a) and 4.6.3.

The Court notes that even on default judgment in ADA cases, plaintiffs often present the results of an investigation by an independent consultant, such as a construction expert that takes measurements, or at least a more detailed declaration of the plaintiff in support of the claim that there is an architectural barrier. Such details do not appear in the instant motion. Nonetheless, taking the allegations as true for purposes of default judgment as presented by Plaintiff in his complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has sufficiently alleged and demonstrated the presence of architectural barriers at the Facility which violate the ADA.

(iv.)    Whether Removal of the Barrier Is Readily Achievable

Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C § 12181(9). Factors to be considered in determining whether such removal is readily achievable include:

> (A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Id. Federal regulations provide examples of readily achievable steps to remove barriers, including: installing ramps, making curb cuts in sidewalks and entrances, widening doors, eliminating a turnstile or providing an alternative accessible path, and creating designated accessible parking spaces, among other examples. 28 C.F.R. § 36.304(b).

The Ninth Circuit has adopted the burden-shifting framework set forth by the Second Circuit in Roberts v. Royal Atlantic Corporation, 542 F.3d 363 (2d Cir. 2008), to determine who bears the burden of proving that removal of an architectural barrier is readily achievable. See Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1034–39 (9th Cir. 2020). Under this burden-shifting analysis, the plaintiff bears the initial burden of "plausibly

showing" that a proposal for removing a barrier is readily achievable, and then the burden shifts to the defendant with respect to the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable.  See id.

Applying this burden-shifting framework here, Plaintiff has met his initial burden to plausibly show that removal of certain identified barriers in the parking lot and at the walkway to the Facility are readily achievable.  Plaintiff maintains Defendants can easily remove the barriers without much difficulty or expense, as the lack of a ramp connecting the accessibility aisle to the raised walkway to the store can be corrected by installing a curb cut ramp, and the difficult-to-locate accessibility parking stall can be corrected by repainting the accessibility markings and installing signage.  (ECF No. 11-1 at 5.)  Further, federal regulations provide a non-exclusive list of steps to remove barriers, including "[c]reating designated accessible parking spaces," and making curb cuts and installing ramps.  28 C.F.R. §§ 36.304(b)(1), (2), (18).  Courts have also observed that such listed items are "examples of readily achievable steps to remove barriers" and found similar allegations to those alleged here sufficient at the default judgment stage.  Johnson v. Garlic Farm Truck Ctr. LLC, No. 20-cv-03871-BLF, 2021 WL 2457154, at *5–6 (N.D. Cal. Jun. 16, 2021) (correcting uneven surface slopes between parking spaces and access aisles is readily achievable); Johnson v. Altamira Corp., No. 16-cv-05335 NC, 2017 WL 1383469 (N.D. Cal. Mar. 27, 2017), report and recommendation adopted, No. 16-CV-05335-LHK, 2017 WL 1365250 (N.D. Cal. Apr. 14, 2017) (deficient travel paths from disabled parking spaces to entrance of facility).

Based on the foregoing, the Court finds Plaintiff has met his burden to plausibly show a proposal for removing the identified barriers is readily achievable.  Id.  The burden thus shifts to Defendants to show that removal of the identified barriers is not readily achievable.  Here, Defendants have not appeared in or defended this action.  Thus, Defendants have failed to meet their burden.

In sum, the Court finds Plaintiff has met his burden of stating a prima facie claim for discrimination under Title III against the Defendant owners of the Facility.  Plaintiff would thereby be entitled to injunctive relief for the violations of the ADA as asserted against these

1   Defendants.

2         **b.**    **Unruh Act**

3         Plaintiff also brings a state law claim for violations of the Unruh Act.  Pursuant to the

4   Unruh Act, all persons are "entitled to the full and equal accommodations, advantages, facilities,

5   privileges, or services in all business establishments of every kind whatsoever."  Cal Civ. Code §

6   51(b).  Additionally, no business establishment of any kind whatsoever shall discriminate against

7   any person in this state on account of disability.  Cal. Civ. Code § 51.5.  Unlike the ADA, the

8   Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages,

9   at a statutory minimum of at least $4,000.00 per violation.  Cal. Civ. Code § 52(a); Molski, 481

10  F.3d at 731; Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the Unruh Act

11  was amended to provide that a violation of the ADA constitutes a violation of the Unruh Act.

12  Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131 (E.D. Cal.

13  2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an individual under the Americans

14  with Disabilities Act of 1990 … also constitutes a violation of this section.").  Thus, the Unruh

15  Act incorporates an individual's rights under the ADA by reference, such that a violation of the

16  ADA also constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ. Code § 51(f).

17        Here, Plaintiff alleges Defendants denied him full and equal accommodations, advantages,

18  facilities, privileges, and services in a business establishment based on his disability.  (ECF No. 1

19  at 7.)  Because the complaint properly alleges a prima facie claim under the ADA against the

20  Defendant owners of the Facility, the Court finds Plaintiff has also properly alleged facts

21  establishing the necessary elements for an Unruh Act claim as against the Defendant owners of

22  the Facility.

23        For the reasons set forth above, the Court finds that the second and third Eitel factors

24  weigh in favor of default judgment as asserted against any established Defendant owner of the

25  Facility.

26        **3.**    The Sum of Money at Stake in the Action

27        Under the fourth Eitel factor, "the court must consider the amount of money at stake in

28  relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F Supp. 2d at 1176; see

1   also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

2          Here, the sum of money at stake in this action weighs in favor of granting default

3   judgment.  Default judgment is disfavored where large amounts of money are involved, or the

4   award would be unreasonable in light of the defendant's actions.  G & G Closed Cir. Events, LLC

5   v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); PepsiCo,

6   Inc., 238 F. Supp. 2d at 1176 ("Under the third Eitel factor, the court must consider the amount of

7   money at stake in relation to the seriousness of Defendant's conduct.").  In addition to injunctive

8   relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees and

9   paralegals' fees in the amount of $2,128.00, and costs of $799.24, for a total award of $6,927.24.

10  (ECF No. 13-1 at 6–9.)  This is not an excessive amount of money, nor does it seem unreasonable

11  in light of the allegations contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing

12  Moore v. Cisneros, No. 1:12-cv-00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13,

13  2012) (noting an award of $10,119.70 on default judgment in ADA discrimination case was "not

14  a relatively large sum of money, nor d[id] it appear unreasonable")); Johnson v. Huynh, No. CIV

15  S-08-1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding injunctive

16  relief and an award of $12,000.00 for ADA violations on default judgment was "relatively small

17  award of damages").

18         Further, even in the event of a finding that default judgment is appropriate, the Court

19  would recommend the attorneys' fees be reduced.  Accordingly, this factor does not weigh

20  against entry of default judgment.

21         4.      The Possibility of a Dispute Concerning Material Facts

22         The next Eitel factor considers the possibility of dispute concerning material facts.  As

23  discussed previously, Plaintiff has not met his burden of establishing all elements of his ADA and

24  Unruh Act claims as asserted against Cedar Plaza.  Thus, the Eitel factors do not support granting

25  default judgment against Cedar Plaza.

26         5.      Whether the Default was Due to Excusable Neglect

27         The sixth Eitel factor considers the possibility that a defendant's default resulted from

28  excusable neglect.  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Courts have found that where a

defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

The Court finds this factor weighs in favor of granting default judgment as Cedar Plaza has failed to file a responsive pleading or otherwise appear in this action, despite being properly served.[5] See Shanghai Automation Instrument Co., 194 F. Supp. 2d at 1005 ("The default of defendant … cannot be attributed to excusable neglect.  All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

### 6.     The Strong Policy Favoring a Decision on the Merits

The final Eitel factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment. Eitel, 782 F.2d at 1472.  Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible.  See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985).  However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is warranted.  Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Here, Cedar Plaza was properly served yet failed to appear or respond in this matter, thus rendering a decision on the merits as to Cedar Plaza impossible. Accordingly, this factor tends to weigh in favor of entering default judgment, with respect to Cedar Plaza.   In this instance, however, there are multiple defendants and the Court has determined that Cedar Plaza was properly served but CFIC was not.  Because the Court has determined the proofs of service were insufficient to demonstrate CFIC was properly served, a defect that Plaintiff may yet cure, the Court cannot conclude at this time that a decision on the merits as to CFIC would be impossible.

Under such circumstances, the Court must also consider whether it would be appropriate to enter default judgment against one, but not all, Defendants.  Federal Rule of Civil Procedure 54(b) permits a court to "direct entry of final judgment as to one or more, but fewer than all …

---

[5] As the Court previously found the proofs of service were insufficient to demonstrate CFIC was properly served, the fifth Eitel factor weighs against default judgment as to Defendant CFIC.

parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); see also Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980).  In determining whether there is just reason for delay in entering a default judgment against some, but not all defendants to an action, the Court must consider whether entry of default judgment could lead to logically inconsistent results.  In re First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2001).  Where the claims against the defaulting and non-defaulting parties are easily separable and distinct, there is less of a chance that a default judgment would lead to inconsistent results against the parties.  Shanghai Automation Instrument Co., Ltd. v. Kuei, 194 F. Supp. 2d 995, 1005–10 (N.D. Cal. 2001).  However, in a case in which the defendants are similarly situated, such that they would have similar defenses, entering default judgment against the defaulting defendant could lead to an inconsistent result if the non-defaulting party were to ultimately prevail in the action.  In re First T.D., 253 F.3d at 532.  Where, as here, the parties are similarly situated, the district court should withhold granting default judgment until the action is resolved on the merits against the non-defaulting defendants, and if the non-defaulting defendants prevail, the action should be dismissed against both the defaulting and non-defaulting defendants.  Frow v. De la Vega, 82 U.S. 552, 554 (1872).

Here, the Court cannot conclude there is "no just reason for delay" of entry of default judgment against Defendant Cedar Plaza while Plaintiff could cure the identified service defects and the action could continue against Defendant CFIC.  Defendants here are similarly situated as the complaint alleges that same facts and claims, and bases for liability, against each of them.  Thus, the defenses that would apply to CFIC could apply equally to Cedar Plaza.[6]  As such, the Court concludes that entering default judgment against only one of the Defendants at this stage in the proceedings could logically lead to inconsistent results.  This determination serves as an independent basis for denying Plaintiff's motion for default judgment; it also supports the Court's conclusion that the sixth Eitel factor, consideration of the strong policy favoring deciding cases on the merits, does not weigh in favor of entering default judgment

---

[6] Conversely, the same dilemma would be present if Plaintiff were able to cure the evidentiary issues with respect to proof of ownership of the Facility as asserted against Cedar Plaza, but not cure the service defects with respect to CFIC.

1    at this time.

2            In conclusion, the Court finds default judgment is inappropriate as to Defendant CFIC

3    because Plaintiff failed to establish proper service of process on CFIC; however, default judgment

4    is inappropriate as to Defendant Cedar Plaza because Plaintiff failed to establish Cedar Plaza

5    owns, leases, or operates the Facility so as to be a properly named Defendant in this action.

6    Therefore, the Court finds Plaintiff's motion for default judgment should be denied as to each

7    Defendant.

8            **D.      Requested Relief**

9            As previously noted by the Court, in addition to injunctive relief, Plaintiff is seeking

10   statutory damages in the amount of $4,000.00, attorneys' fees and paralegals' fees in the amount

11   of $2,128.00, and costs of $799.24, for a total award of $6,927.24.  (ECF No. 13-1 at 6–9.)

12   However, because the Court finds Plaintiff's motion for default judgment should be denied as to

13   both Defendants, it does not reach the issue of requested relief.

14                                           **IV.**

15                        **CONCLUSION AND RECOMMENDATIONS**

16           The entry of default judgment is within the discretion of the Court.  See Aldabe v. Aldabe,

17   616 F.2d 1089, 1092 (9th Cir. 1980).  The Court finds service to be inadequate as to Defendant

18   California-Fresno Investment Company, doing business as Bad Buds Gas and Car Wash; further,

19   the Court finds Plaintiff fails to establish Defendant Cedar Plaza, Inc. owns, leases, or operates

20   the Facility so as to be a properly named Defendant in this action.  Accordingly, the Court

21   recommends the motion for default judgment be denied as asserted against all Defendants without

22   prejudice.

23           Based on the foregoing, IT IS HEREBY ORDERED that the April 26, 2023 hearing on

24   the motion is VACATED;

25           Furthermore, IT IS HEREBY RECOMMENDED that Plaintiff's motion for default

26   judgment (ECF No. 11) be DENIED.

27           Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations

28   to each of the Defendants at that Defendant's last known address.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 21, 2023**

UNITED STATES MAGISTRATE JUDGE