# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENDRIK BLOCK,<br><br>             Plaintiff,<br><br>      v.<br><br>CALIFORNIA-FRESNO INVESTMENT COMPANY, DBA BAD BUDS GAS AND CAR WASH, et al.,<br><br>             Defendants. | Case No. 1:22-cv-01419-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITH REDUCTION IN ATTORNEYS' FEES AND COSTS<br><br>ORDER REQUIRING SERVICE ON DEFENDANT WITHIN THREE DAYS<br><br>(ECF No. 24)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff Hendrik Block's ("Plaintiff") motion for default judgment, filed on August 30, 2023. Plaintiff seeks default judgment against Defendant California-Fresno Investment Company, doing business as Bad Buds Gas and Car Wash. No opposition to the motion was filed. On November 8, 2023, the Court held a hearing on the motion, at which no appearance was made on behalf of Defendant. Having considered the moving papers, the declarations and exhibits attached thereto, Defendant's nonappearance at the hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Plaintiff's motion for default judgment, subject to a reduction in the requested attorneys'

1

fees and costs.

## II.

## BACKGROUND

### A.      Procedural History

On November 3, 2022, Plaintiff filed this action against Defendants California-Fresno Investment Company ("CFIC"), doing business as Bad Buds Gas and Car Wash, and Cedar Plaza, Inc. ("Cedar Plaza").  (ECF No. 1.)  Neither Defendant responded to the complaint.  On December 6, 2022, Plaintiff requested default be entered against Cedar Plaza (ECF No. 6) and default was entered the same day (ECF No. 7.)  On January 4, 2023, Plaintiff requested default be entered against CFIC (ECF No. 8) and default was entered on January 5, 2023 (ECF No. 9.)

On February 24, 2023, Plaintiff filed a motion for default judgment against both Defendants.  (ECF No. 11.)  On April 24, 2023, the Court recommended the motion for default judgment be denied without prejudice, finding (1) service was inadequate as to Defendant CFIC and (2) Plaintiff failed to establish Cedar Plaza owns, leases, or operates Bad Buds Gas and Car Wash so as to be a properly named Defendant.  (ECF No. 14.)  On May 22, 2023, the District Judge adopted the findings and recommendations.  (ECF No. 16.)

On May 23, 2023, the Court granted Plaintiff an extension of time to complete service on Defendant CFIC until July 24, 2023.  (ECF No. 17.)  The Court also ordered Plaintiff to either seek leave to amend the complaint to cure the defects with respect to Cedar Plaza or dismiss Cedar Plaza as a defendant in this action by July 24, 2023.  (Id.)

On May 29, 2023, Plaintiff served Defendant CFIC.  (ECF No. 18.)  The proof of service indicates Plaintiff served James L. Shehadey, the "person authorized to accept service of process," with the summons and complaint on May 11, 2023, by substituted service on Bradley Myer, described as "Person in Charge of Office," at 405 N Palm Avenue, Fresno, California 93701.  (Id.) The proof of service also indicates that Plaintiff mailed the summons and complaint to James L. Shehadey at 405 N Palm Avenue in Fresno, California 93701 on May 19, 2023.  (Id.)  On June 29, 2023, Plaintiff requested default be entered against CFIC (ECF No. 19) and default was entered on June 30, 2023 (ECF No. 20).

1    On July 24, 2023, Plaintiff filed a notice of voluntary dismissal of Defendant Cedar Plaza

2  pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  (ECF No. 21.)  On July 25, the Court

3  directed the Clerk of Court to terminate Cedar Plaza as a defendant in this action.  (ECF No. 22.)

4    On August 30, 2023, Plaintiff filed the instant motion for default judgment against CFIC

5  ("Defendant").  (ECF No. 24.)  Plaintiff also mailed the instant motion to Defendant on August 30,

6  2023.  (Id.)  Defendant has not filed an opposition to the motion nor otherwise appeared in this

7  action.  The deadline to file an opposition has expired.  See L.R. 230(c).

8    A hearing on Plaintiff's motion for default was originally set for October 18, 2023.  (ECF

9  No. 25.)  On October 11, 2023, Plaintiff requested the Court continue the hearing to November 8,

10  2023.  (ECF No. 26.)  On October 12, 2023, the Court granted Plaintiff's motion.  (ECF No. 27.)

11  Plaintiff provided a proof of service demonstrating the Court's October 12, 2023 order was

12  forwarded to CFIC's registered agent, James L. Shehadey at 405 N Palm Avenue in Fresno,

13  California 93701 on October 18, 2023.  (ECF No. 28.)

14    On November 8, 2023, the Court held a hearing via videoconference, with the courtroom

15  open to the public.  Counsel Tanya E. Moore appeared via video on behalf of Plaintiff.  No one

16  appeared on behalf of Defendant via videoconference nor in person, despite the courtroom being

17  open to the public.[1]

18    **B.    Plaintiff's Allegations in the Operative Complaint**

19    Plaintiff's verified complaint asserts causes of action for violations of the Americans with

20  Disabilities Act ("ADA"), California's Unruh Civil Rights Act (the "Unruh Act"), and denial of

21  full and equal access to public facilities pursuant to California Health and Safety Code §§ 19953 *et*

22  *seq.* against Defendant, the purported owner/operator/leaser of the facility Bad Buds Gas and Car

23  Wash, located at 6777 North Cedar Avenue, Fresno, California 93710 (the "Facility").  (ECF No. 1

24  at 1–2, 4–8.)  Plaintiff alleges the Facility, a gas station, is open to the public, intended for non-

25  residential use, affects commerce, and is a "public accommodation" under 42 U.S.C. §

26

27  _____

[1] At the hearing, Plaintiff's counsel disclosed that she recently received an email from an attorney who stated he
represented CFIC in various matters, but purportedly confirmed that the scope of his representation did not extend to
the instant case.

28

3

1  12181(7)(F).  (Id. at 2; Pl.'s Mot. Default ("Mot."), ECF No. 24-1 at 3.) [2]

2      Plaintiff alleges he is substantially limited in his ability to walk, and must use a cane,

3  walker, wheelchair, or electric scooter for mobility.  (ECF No. 1 at 2.)  Plaintiff contends he

4  regularly travels to the area where the Facility is located.  (Id.)  On or about May 21, 2022,

5  Plaintiff alleges he visited the Facility to purchase snacks.  (Id.)  During the visit, Plaintiff

6  contends he encountered barriers that interfered with and denied his ability to use and enjoy the

7  goods, services, privileges, and accommodations offered at the Facility.  (Id.)  More specifically,

8  Plaintiff identifies the following barriers:

9      **a) Designated accessible parking not properly identified**

10     Plaintiff had difficulty locating the designated accessible parking
       stall in the Facility's parking lot.  The accessible parking stall was
11     missing signage and had faded pavement markings … in violation
       of 1991 ADAAG § 4.1.2(5)(a).
12

13     **b) Lack of accessible route from parking to Facility entrance**

14     Plaintiff was not able to find an accessible route of travel from the
       accessible parking stall to the Facility entrance.  The parking stall
15     and access aisle did not have a curb ramp that would allow Plaintiff
       using his wheelchair access onto the raised walkway … in violation
16     of 1991 § ADAAG 4.6.3.

17 (Id. at 3; ECF No. 24-1 at 5.)  Plaintiff asserts the described barriers constitute noncompliance with

18 the 1991 ADA Accessibility Guidelines ("1991 Standards") and/or the 2010 ADA Standards for

19 Accessible Design, in violation of 42 U.S.C. § 12182(a), as well as California Civil Code § 51(f).[3]

20 (ECF No. 1 at 4–8; ECF No. 24-1 at 4–6.)  Plaintiff further alleges Defendant knew or should have

21 known of the barriers, and that Defendant has the financial means to remove them but refuses to do

22 so.  (ECF No. 1 at 3.)  Plaintiff claims the obviousness of the barriers is sufficient to establish

23 discriminatory intent.  (Id. at 4.)

24     As a result of the aforementioned barriers, Plaintiff contends he is deterred from visiting

25

26 [2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
   CM/ECF electronic court docketing system.

27 [3] The Court notes that, while the complaint asserts a third cause of action for denial of full and equal access to public
   facilities and alleges Defendants violated California's Health and Safety Code §§ 19955(a) and 19959, in addition to
   the Unruh Act, the motion for default judgment only specifically asserts an Unruh Act state law claim.  (Compare
28 ECF No. 1 at 7–8 with ECF No. 24-1 at 6–7.)

the Facility because its goods, services, facilities, privileges, advantages, and accommodations were unavailable to him due to his physical disabilities and Plaintiff will return to the Facility once the barriers are removed.  (Id. at 3.)  Plaintiff seeks injunctive and declaratory relief, statutory damages, attorneys' fees, and costs.  (Id. at 8; Mot. at 6-8.)

### III.

### LEGAL STANDARD

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Id.

The decision to grant a motion for entry of default judgment is within the discretion of the court.  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.").  The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel, 782 F.2d at 1471–72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  The amount of damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008).  Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted), superseded by statute on other grounds, Pub. L. No. 100-702, 102 Stat. 4669.  The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

## IV.

## DISCUSSION

The Court first determines whether the Court properly has jurisdiction in this matter, and then turns to the Eitel factors to determine whether default judgment should be entered.

### A.    Jurisdiction

1.    Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to

6

that granted by Congress.  U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law."  Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 8–9 (1983) (citations omitted), superseded by statute on other grounds, 28 U.S.C. § 1441(e)).  "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Republican Party of Guam, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the ADA of 1990, 42 U.S.C. §§ 12101, *et seq.*  Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331.  In addition, the Court may exert supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's related state law claims under the Unruh Act, California Civil Code §§ 51, *et seq.*

## 2.     The Court Finds Service of Process Is Adequate

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  See J & J Sports Prods., Inc. v. Singh, No. 1:13-CV-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) (stating that if a party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").  "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."  Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail), 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted).  "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  Direct Mail, 840 F.2d at 688 (quoting United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)).  However, "without substantial compliance with Rule 4, 'neither

1  actual notice nor simply naming the defendant in the complaint will provide personal

2  jurisdiction.'" Direct Mail, 840 F.2d at 688 (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.

3  1986)).  "[A] signed return of service constitutes prima facie evidence of valid service which can

4  be overcome only by strong and convincing evidence."  SEC v. Internet Solutions for Bus., Inc.,

5  509 F.3d 1161, 1163 (9th Cir. 2007).

6         Here, Defendant is a business entity, thus Rule 4 subdivision (h) is applicable.  Under Rule

7  4(h), a corporation, partnership, or other unincorporated association that is subject to suit under a

8  common name must be served "(A) in the manner prescribed by Rule 4(e)(1) for serving an

9  individual," or "(B) by delivering a copy of the summons and of the complaint to an officer, a

10 managing or general agent, or any other agent authorized by appointment or by law to receive

11 service of process and—if the agent is one authorized by statute and the statute so requires—by

12 also mailing a copy of each to the defendant[.]"  Fed. R. Civ. P. 4(h)(1)(A)-(B).  Under Rule

13 4(e)(1), an individual may be served pursuant to state law.  Fed. R. Civ. P. 4(e)(1).

14        California law sets forth requirements both as to who may be served (Cal. Code Civ. Proc.

15 §§ 415.10–416.90), and the manner in which service on that person may be effected (Cal. Code

16 Civ. Proc. §§ 416.10–415.95).  As relevant here, service may be completed upon various

17 "persons," including corporations (Cal. Code Civ. Proc. § 416.10).  A corporation may be served

18 by delivering a copy of the summons and complaint to: (1) the person designated as agent for

19 service of process; (2) the president, chief executive officer, or other head of the corporation, a

20 vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or

21 chief financial officer, a general manager a person authorized by the corporation to receive service

22 of process; or (3) as authorized by provisions of California's Corporations Code §§ 1701, 1702,

23 2110, 2111, 3301–3303, or 6500–6504 (as in effect at the applicable time).  Cal. Code Civ. Proc.

24 §§ 416.10(a)–(b), (d).

25        As to the manner in which service may be completed, California law permits either

26 personal service (Cal. Code Civ. Proc. § 415.10) or substituted service (Cal. Code Civ. Proc. §

27 415.20).  As noted under Cal. Code Civ. Proc. § 415.20, substitute service on regular corporations,

28 dissolved/charter-forfeited corporations, or joint stock companies/associations may be completed

as follows:

> a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office…with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. When service is effected by leaving a copy of the summons and complaint at a mailing address, it shall be left with a person at least 18 years of age, who shall be informed of the contents thereof.  Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Cal. Civ. Proc. Code § 415.20(a)

Here, the business search page of the California Secretary of State website provides that Defendant is a corporation in good standing, with its principal place of business at 405 N Palm Avenue, Fresno, California 93701 and mailing address at P.O. Box 2625, Fresno, California 93745. [4]  Business search for California-Fresno Investment Company, Cal. Secretary of State, https://bizfileonline.sos.ca.gov/search/business (last visited October 27, 2023).  The Secretary of State website further indicates the agent for service of process is James L. Shehadey, located at the same principal address.  Id.

Plaintiff's proof of service proffers that Plaintiff served James L. Shehadey, the "person authorized to accept service of process," on May 11, 2023 at 9:32 a.m., by substituted service on Bradley Myer, described as "Person In Charge of Office" at 405 N Palm Avenue, Fresno, California 93701.  (ECF No. 18 at 2.)  The proof of service also includes a declaration of mailing, which indicates a copy of the summons and complaint was subsequently mailed to CFIC, James L. Shehadey on May 19, 2023, at the same 405 N. Palm Avenue address.  (Id. at 3.)  As to the manner of substituted service, the affidavit provides unproductive boilerplate language that states substituted

---

[4]  Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein.  See Daniels-Hall v. Nat'l. Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information on websites of two school districts because they were government entities).  Specifically, Courts routinely take judicial notice of information contained in the California Secretary of State's website.  See, e.g., Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (profiles on California Secretary of State website proper for judicial notice); see also Applied Underwriters, Inc. v. Lara, 530 F. Supp. 3d 914, 924 (E.D. Cal. 2021), aff'd on other grounds, 37 F.4th 579 (9th Cir. 2022), cert. denied, 143 S. Ct. 748 (2023) (judicially noticing business information from Nebraska Secretary of State website).

service was completed "under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B)." (Id.)  In his motion, Plaintiff states Defendant was served by substituted service in the manner prescribed by Rule 4(h)(1)(A) (permitting service on a person pursuant to Rule 4(e)(1), which requires compliance with state law).  (Mot. 10.)  Plaintiff contends CFIC was served by substitute service pursuant to California Code of Civil Procedure § 415.20(a).  (Id.)

The Court finds service was properly effected under California's provisions for substitute service on a corporation pursuant to Cal. Code Civ. Proc. § 415.20(a).  The proof of service indicates that substituted service was executed during usual office hours on Thursday, May 11, 2023 at the same address as that of the registered agent for service of process, on Bradley Myer, a person "at least 18 years of age apparently in charge of the office or usual place of business," who was informed of the general nature of the documents.  (ECF No. 18 at 2.)  See Tim Pao v. Liphan Lee, No. CV-13-6421-DSF (AJWX), 2013 WL 12203046, at *2 (C.D. Cal. Oct. 21, 2013) ("[T]he process server's affidavit adequately described [the individual served] as a person 'apparently in charge[,]' [and] [t]he Pico Boulevard address is the registered entity address for Pao, Inc.").  The Proof of Service also indicates that, in compliance with Cal. Code Civ. Proc. § 415.20(a), the summons, complaint, and other documents were subsequently sent by prepaid first-class mail to James L. Shehadey at the same 405 N Palm Avenue address where a copy of the summons and complaint were left.  (ECF No. 18 at 3.)  See J & J Sports Prods., Inc. v. Barksdale, No. CIV S-11-2994 JAM, 2012 WL 1353903, at *5 (E.D. Cal. Apr. 13, 2012) (noting "the substituted service statute [] has an additional safeguard built into the process by requiring follow-up service by mail.")

Although the proof of service fails to provide any factual details as to how the process server knew Mr. Myers was "apparently in charge of the business," "a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence."  Internet Solutions for Bus., Inc., 509 F.3d at 1163.  The Court therefore finds service was properly effected on Defendant.

**B.**      **Evaluation of the Eitel Factors in Favor of Default Judgment**

The Court finds that consideration of the Eitel factors weighs in favor of granting default

1  judgment in favor of Plaintiff.

2          1.      Prejudice to Plaintiff if Default Judgment Is Not Granted

3          The first factor considered is whether Plaintiff would suffer prejudice if default judgment is

4  not entered.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Generally, where default has been

5  entered against a defendant, a plaintiff has no other means by which to recover against that

6  defendant.  Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200–01 (C.D.

7  Cal. 2012).  Plaintiff filed the instant action on November 3, 2022.  (ECF No. 1.)  Defendant was

8  alleged to have been properly served on May 29, 2023.  (ECF No. 18.)  Defendant has not filed a

9  responsive pleading or otherwise appeared in the action; Defendant has failed to file any

10  opposition to the instant motion for default judgment; and failed to make an appearance at the

11  November 8, 2023 hearing held on the instant motion.  If default judgment is not entered, Plaintiff,

12  a disabled individual, is effectively denied a remedy for the violations of the disability statutes as

13  alleged, until such time as the Defendant in this action decides to appear in the litigation, which

14  may never occur.

15          For these reasons, the Court finds Plaintiff would be prejudiced if default judgment were

16  not granted.  See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).  This Eitel

17  factor thus weighs in favor of default judgment against Defendant.

18          2.      The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

19          The second and third Eitel factors, taken together, "require that a plaintiff state a claim on

20  which the [plaintiff] may recover."  PepsiCo, Inc., 238 F. Supp. 2d at 1175 (citations and internal

21  quotations omitted).  Notably a "defendant is not held to admit facts that are not well-pleaded or to

22  admit conclusions of law."  DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007).

23  While Plaintiff's operative complaint asserts claims under the ADA, the Unruh Act, and denial of

24  full and equal access to public facilities pursuant to California Health and Safety Code §§ 19955(a)

25  and 19959, Plaintiff's instant motion addresses only the claims for violation of the ADA and the

26  Unruh.  (Compare ECF No. 1 at 7–8 with ECF No. 24-1 at 6–7.)  Accordingly, the Court only

27  analyzes the merits of Plaintiff's ADA and Unruh Act state law claims.

28  ///

**a.**     **Americans with Disabilities Act**

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation.   42 U.S.C. § 12182(a).   "Discrimination" is defined as a failure to make reasonable modifications in policies, practices, or procedures, when modification is necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."   Id. § 12182(b)(2)(A)(ii).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability."   Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).   Facilities include "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."   28 C.F.R. § 36.104.   Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable."   Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

i.     Plaintiff Has Established He Is Disabled Under the ADA

Plaintiff must first allege he is disabled within the meaning of the ADA.  Molski, 481 F.3d at 730.  The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  Major life activities include walking, standing, and hearing.  42 U.S.C. § 12102(2)(A).  An individual who is substantially limited in his ability to walk is disabled under the ADA.  42 U.S.C. § 12102.

Plaintiff alleges that he is substantially limited in his ability to walk and must use a cane, walker, wheelchair, or electric scooter for mobility.  (Compl. ¶ 8.)  Taking the allegations contained in the verified complaint as true for purposes of default judgment, Plaintiff has adequately established this element of his ADA discrimination claim.

      ii.      <u>Plaintiff Has Established Defendant Owns, Operates, or Leases a Place of Public Accommodation</u>

Plaintiff must allege Defendant "owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a); <u>Molski</u>, 481 F.3d at 730.  The ADA expressly provides that a "gas station" is considered a public accommodation.  42 U.S.C. § 12181(7)(F).  Plaintiff proffers the Facility—which Plaintiff alleges he visited to purchase snacks—is a gas station open to the public, intended for non-residential use, its operation affects commerce, and is a place of public accommodation under the ADA.  (Compl. ¶¶ 9-10; Mot. 3.)

Plaintiff's complaint generally alleges, "Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation."  (Compl. ¶ 7; <u>see also</u> Mot. 6.) Plaintiff's counsel's declaration attached to the instant motion provides additional support for Plaintiff's contention.  (Declaration of Tanya Moore ("Moore Decl."), ECF No. 24-2.)  Counsel attaches a printout of a search result for 6777 N. Cedar Avenue, Fresno, California 93710, APN 408-264-25 from the "Parcel Quest public records database," which counsel proffers reflects that CFIC owns the real property on which the Facility is located.  (Moore Decl. ¶¶ 14-15; Ex. D, ECF No. 24-3 at 12-14.)  The printout indicates the document was downloaded and/or printed from Parcel Quest on July 24, 2023, and Plaintiff's counsel proffers she last accessed the website on August 30, 2023.  (Moore Decl. ¶ 14; Ex. D.)  The Parcel Quest records depict the most recent recorded document is a "release," identified as Document No. 2017.55088, which was recorded on May 4, 2017.  (<u>Id</u>.)  Counsel also produces Fresno County Document No. 2017.55088, filed with the Fresno County Recorder's Office, entitled "full reconveyance of deed of trust," which reflects that a mortgagee reconveyed title in 6777 N. Cedar Avenue, Fresno, California 93710 to CFIC due to full payment of a March 2000 loan.  (Moore Decl. ¶ 15; Ex. E, ECF No. 24-3 at 16.)

Counsel also produces a copy of an online California Department of Alcoholic Beverage

1   Control ("ABC") report, dated February 23, 2023, for a business named "California Fresno Oil

2   Co.," located at 6777 N. Cedar Avenue, Fresno, California 93710.  (Moore Decl. ¶ 16; Ex. F, ECF

3   No. 24-3 at 18-20.)  This appears to be the same document as that produced in Plaintiff's initial

4   motion for default judgment.  (See Ex. F, ECF No. 11-3 at 14–17.)  Although the report does not

5   reference Bad Buds Gas and Car Wash, CFIC is listed as the "Primary Owner" of the business,

6   "California Fresno Oil Co."  (Ex. F, ECF No. 24-3 at 18.)  The Court reiterates that while it is

7   possible California Fresno Oil Co. and Bad Buds Gas and Car Wash are one and the same, such

8   information is not evident from the ABC report.  For example, as the report is dated February 23, 2023,

9   subsequent to the relevant times identified in the complaint, it is equally possible that California Fresno

10  Oil Co. is a new facility that has replaced Bad Buds Gas and Car Wash.[5]

11      Taking the allegations as true for purposes of default judgment, and in consideration of

12  counsel's declaration and the supporting property records, the Court finds Plaintiff has sufficiently

13  alleged that the Defendant owns or operates Facility, a place of public accommodation.

14      iii.    Plaintiff Was Denied Public Accommodations Due to an Architectural Barrier

15      (1)     Whether Denial of Access Was Due to Disability

16      Plaintiff must allege and prove that he was denied public accommodations by a defendant

17  because of his disability.  Molski, 481 F.3d at 730.  Here, Plaintiff alleges it was difficult for him

18  to locate the designated accessible parking in the Facility's lot because it was missing signage and

19  had faded pavement markings that were barely visible.  (Compl. ¶ 10.)  Further, Plaintiff alleges he

20  could not find an accessible route to the Facility entrance from the designated accessible parking

21  stall because the parking stall and access aisle were not connected to any curb ramp that would

22  allow access onto the raised walkway.  (Id.)  Taking the allegations in the complaint as true for

23  purposes of default judgment, Plaintiff has adequately established he was denied access to the

24  Facility due to his disability.

25  ///

---

26  [5] This is illustrated by the fact that the ABC website currently reflects that on May 3, 2023, the liquor license
27  associated with "California Fresno Oil Co" was canceled and transferred to a business named "SNG #104," located at
    the same 6777 N Cedar Ave., Fresno, California 93710 address.  License search for License No. 357949,
28  https://www.abc.ca.gov/licensing/license-lookup/license-number/ (last visited Oct. 11, 2023).  See Fed. R. Evid.
    201(b).  The primary owner of "SNG #104" is listed as "Shop N Go Inc," not CFIC.  (Id.)

1          (2)        Architectural Barrier

2          Congress entrusted the Attorney General with promulgating the implementing regulations

3    for Title III.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42

4    U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent

5    with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance

6    Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities

7    ("ADAAG") in 1991.  Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The

8    Attorney General adopted the ADAAG as the "Standards for Accessible Design," which lay out

9    the technical structural requirements of places of public accommodation and are applicable during

10   the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).

11   "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility

12   Guidelines." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011).

13         Plaintiff proffers that because no discovery has occurred, he does not know if the Facility

14   was constructed or had any alteration done after March 15, 2012, and therefore will apply the 1991

15   ADAAG standards to determine whether a barrier existed at the time of his visit to the Facility.

16   (Mot. 4; see also Compl. ¶ 14.)  However, Plaintiff submits—and the Court agrees—that the 2010

17   Standards now in effect will govern any injunction which issues, since the remedial work will be

18   undertaken after March 15, 2012.  (Mot. 4.)

19         As noted herein, Plaintiff alleges he could not easily find the accessible parking stall, and

20   thereafter was unable to reach the raised walkway because there was no connecting ramp from the

21   accessibility aisle to the raised walkway.  (Compl. ¶ 10.)  Plaintiff maintains these barriers violate

22   1991 ADAAG §§ 4.1.2(5)(a) and 4.6.3.  (Mot. 5.)

23         The Court notes that even on default judgment in ADA cases, plaintiffs often present the

24   results of an investigation by an independent consultant, such as a construction expert that takes

25   measurements, or at least a more detailed declaration of the plaintiff in support of the claim that

26   there is an architectural barrier.  Such details do not appear in the instant motion.  Nonetheless,

27   taking the allegations as true for purposes of default judgment as presented by Plaintiff in his

28   verified complaint, and based on the applicable laws and regulations, the Court finds Plaintiff has

1  sufficiently alleged and demonstrated the presence of architectural barriers at the Facility which

2  violate the ADA.

3         (3)       Whether Removal of the Barrier Is Readily Achievable

4         Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable

5  and able to be carried out without much difficulty or expense."  42 U.S.C § 12181(9).  Factors to

6  be considered in determining whether such removal is readily achievable include:

> (A) the nature and cost of the action needed under this chapter; (B)
> the overall financial resources of the facility or facilities involved in
> the action; the number of persons employed at such facility; the
> effect on expenses and resources, or the impact otherwise of such
> action upon the operation of the facility; (C) the overall financial
> resources of the covered entity; the overall size of the business of a
> covered entity with respect to the number of its employees; the
> number, type, and location of its facilities; and (D) the type of
> operation or operations of the covered entity, including the
> composition, structure, and functions of the workforce of such
> entity; the geographic separateness, administrative or fiscal
> relationship of the facility or facilities in question to the covered
> entity.

14  Id.  Federal regulations provide examples of readily achievable steps to remove barriers, including,

15  but not limited to, installing ramps, making curb cuts in sidewalks and entrances, widening doors,

16  eliminating a turnstile or providing an alternative accessible path, and creating designated

17  accessible parking spaces.  28 C.F.R. § 36.304(b).

18         "All the plaintiff must do at the pleadings stage to proceed under § 12182(b)(2)(A)(iv) is

19  plausibly allege that the barrier's removal is readily achievable."  Whitaker v. Sheikh, No. 21-CV-

20  0493-KJM-KJN, 2022 WL 1262023, at *7 (E.D. Cal. Apr. 28, 2022).  If the defendant fails to

21  plead an applicable affirmative defense, "the plaintiff is effectively entitled to judgment on the

22  pleadings as to that claim—assuming he pleads the preceding elements of a qualifying disability, a

23  covered public accommodation, and an architectural barrier encountered."  Id.; cf. Lopez v.

24  Catalina Channel Express, Inc., 974 F.3d 1030, 1038 (9th Cir. 2020) (applying a burden-shifting

25  analysis when evaluating evidence at the summary judgment stage wherein the plaintiff bears the

26  initial burden of "plausibly showing" that a proposal for removing a barrier is readily achievable,

27  and then the burden shifts to the defendant with respect to the ultimate burden of persuasion on an

28  affirmative defense that removal of a barrier is not readily achievable).

16

Here, Plaintiff generally alleges that "Defendants can easily remove the barriers without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so."  (Compl. ¶ 21.)  In the instant motion, Plaintiff argues that Defendant can easily remove the barriers without much difficulty or expense, as the lack of a ramp connecting the accessibility aisle to the raised walkway to the store can be corrected by installing a curb cut ramp, and the difficult-to-locate accessibility parking stall can be corrected by repainting the pavement markings and installing signage.  (Mot. 5.)

For purposes of default judgment, the Court accepts Plaintiff's allegations as true and finds Plaintiff has plausibly alleged that removal of the architectural barriers he encountered is readily achievable.  Federal regulations provide a non-exclusive list of steps to remove barriers, including "[c]reating designated accessible parking spaces," and making curb cuts and installing ramps.  28 C.F.R. §§ 36.304(b)(1), (2), (18).  Courts have also observed that such listed items are "examples of readily achievable steps to remove barriers" and found similar allegations to those alleged here sufficient at the default judgment stage.  Johnson v. Garlic Farm Truck Ctr. LLC, No. 20-cv-03871-BLF, 2021 WL 2457154, at *5–6 (N.D. Cal. Jun. 16, 2021) (correcting uneven surface slopes between parking spaces and access aisles is readily achievable); Johnson v. Altamira Corp., No. 16-cv-05335-NC, 2017 WL 1383469 (N.D. Cal. Mar. 27, 2017), report and recommendation adopted, No. 16-CV-05335-LHK, 2017 WL 1365250 (N.D. Cal. Apr. 14, 2017) (deficient travel paths from disabled parking spaces to entrance of facility).  Defendant has not appeared in nor defended this action and thus has offered no affirmative defense that the barriers' removal is not readily achievable.

In sum, Plaintiff has plausibly alleged a prima facie claim for discrimination under Title III against the Defendant owners of the Facility.  Plaintiff would thereby be entitled to injunctive relief for the violations of the ADA as asserted against Defendant.

**b.    California's Unruh Act**

Plaintiff also brings a state law claim for violations of the Unruh Act.  Pursuant to the Unruh Act, all persons are "entitled to the full and equal accommodations, advantages, facilities,

privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Additionally, no business establishment of any kind whatsoever shall discriminate against any person in this state on account of disability. Cal. Civ. Code § 51.5. Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation. Cal. Civ. Code § 52(a); Molski, 481 F.3d at 731. After passage of the ADA in 1990, the Unruh Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Act. Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131 (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990 … also constitutes a violation of this section."). Thus, the Unruh Act incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f).

Here, Plaintiff alleges Defendant denied him full and equal accommodations, advantages, facilities, privileges, and services in a business establishment based on his disability. (Compl. ¶ 35.) Because the complaint properly alleges a prima facie claim under the ADA against the Defendant owners of the Facility, the Court finds Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Act claim.

For the reasons set forth above, the Court finds that the second and third Eitel factors weigh in favor of default judgment as asserted against Defendant.

### 3. The Sum of Money at Stake in the Action

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F Supp. 2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Here, the sum of money at stake in this action weighs in favor of granting default judgment. Default judgment is disfavored where large amounts of money are involved, or the award would be unreasonable in light of the defendant's actions. G & G Closed Cir. Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); PepsiCo, Inc., 238 F. Supp. 2d at 1176 ("Under the third Eitel factor, the court must consider the amount of money at

stake in relation to the seriousness of Defendant's conduct.").  In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees and paralegals' fees in the amount of $3,312.00, and costs of $831.63, for a total award of $8,143.63.  (Mem. 6–9.)  This is not an excessive amount of money, nor does it seem unreasonable in light of the allegations contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing Moore v. Cisneros, No. 1:12-cv-00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting an award of $10,119.70 on default judgment in ADA discrimination case was "not a relatively large sum of money, nor d[id] it appear unreasonable")); Johnson v. Huynh, No. CIV S-08-1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding injunctive relief and an award of $12,000.00 for ADA violations on default judgment was "relatively small award of damages").

Further, the Court recommends the attorneys' fees and costs should be reduced, as discussed below.  For these reasons, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendant.

### 4.   The Possibility of a Dispute Concerning Material Facts

The next Eitel factor considers the possibility of a dispute concerning material facts.  As discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and the Unruh Act by demonstrating his encountering of architectural barriers at the Facility.  The Court finds this factor weighs in favor of entering default judgment as there is no possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendant's default.  See Garamendi, 683 F.3d at 1080; PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.").  Accordingly, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendant.

### 5.   Whether the Default Was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that a defendant's default resulted from excusable neglect.  PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect.

*Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

The Court finds this factor weighs in favor of granting default judgment as Defendant has failed to file a responsive pleading or otherwise appear in this action, despite being properly served. *See id.* ("The default of defendant … cannot be attributed to excusable neglect. All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

### 6. The Strong Policy Favoring a Decision on the Merits

The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment. *Eitel*, 782 F.2d at 1472. Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible. *See* *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). However, the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, the Defendant's failure to appear has made a decision on the merits impossible at this juncture. Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in the complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits. *See* *PepsiCo*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Rule 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Accordingly, the Court finds the policy favoring decisions on the merit does not preclude entering default judgment against Defendants under these circumstances.

Based on the foregoing, the Court finds that the *Eitel* factors weigh in favor of granting default judgment and recommends that Plaintiff's motion for default judgment be granted. The Court now turns to the types of relief requested by Plaintiff.

### D. Requested Relief

As previously noted, in addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees and paralegals' fees in the amount of $3,312.00, and costs of $831.63, for a total award of $8,143.63. (Mem. 7-8.) The Court recommends reducing the

1    award of attorneys' fees and costs for the reasons discussed below.

2        1.     <u>Injunctive Relief</u>

3        Plaintiff seeks an injunction compelling Defendant to comply with the ADA by removing

4    the itemized barriers that Plaintiff personally encountered. (Compl. at p. 8; Mem. 11; ECF 24-6 at

5    2.) The ADA provides that "injunctive relief shall include an order to alter facilities to make such

6    facilities readily accessible to and usable by individuals with disabilities to the extent required" by

7    the ADA. 42 U.S.C. § 12188(a)(2). A court may grant injunctive relief for violations of the Unruh

8    Act under § 52.1(h). <u>Vogel</u>, 992 F. Supp. 2d at 1015; Cal. Civ. Code § 52.1 ("An action brought

9    pursuant to this section is independent of any other action, remedy, or procedure that may be

10    available to an aggrieved individual under any other provision of law."). "Injunctive relief may be

11    granted 'when architectural barriers at defendant's establishment violate the ADA.' " <u>Johnson v.</u>

12    <u>Pizano</u>, No. 2:17-CV-1655 TLN DB, 2019 WL 2499188, at *6 (E.D. Cal. June 17, 2019) (quoting

13    <u>Vogel</u>, 992 F.Supp.2d at 1015).

14        Pursuant to federal and California law, Plaintiff is entitled to the removal of those

15    architectural barriers which he encountered on his visit to the Facility that violated the ADA.

16    Therefore, an injunction should issue requiring Defendant to remove barriers that are in violation

17    of the ADA and the ADAAG.

18        2.     <u>Statutory Damages</u>

19        Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the

20    California Unruh Civil Rights Act. The Unruh Act provides for minimum statutory damages of

21    $4,000.00 for each violation. Cal. Civ. Code § 52(a). Under the Unruh Act, statutory damages

22    may be recovered if a violation of one or more construction-related accessibility standards denied

23    the plaintiff full and equal access to the place of public accommodation on a particular occasion.

24    Cal. Civ. Code § 55.56(a). A plaintiff is denied full and equal access only when they personally

25    encountered the violation on a specific occasion. Cal. Civ. Code § 55.56(b). A litigant need not

26    prove any actual damages to recover statutory damages of $4,000.00. <u>Molski</u>, 481 F.3d at 731.

27        As discussed above, Plaintiff sufficiently alleged violation of the ADA which established

28    a violation of the Unruh Act, and thus the Court finds that Plaintiff is entitled to statutory damages

1  in the amount of $4,000.00.

2       3.       Attorneys' Fees and Costs

3       Plaintiff is requesting attorneys' fees and paralegals' fees in the amount of $3,312.00, and

4  costs of $831.63, for a total award of $4,143.63 in fees and costs.  (Mem. 8; Moore Decl. ¶¶ 3-13,

5  ECF No. 24-2; Ex. A, ECF No. 24-3 at 2-5; Ex. B, ECF No. 24-3 at 7-8; Ex. C, ECF No. 24-3 at

6  10.)  Pursuant to 42 U.S.C. § 12205, the party that prevails on a claim brought under the ADA may

7  recover "a reasonable attorney's fee, including litigation expenses," at the discretion of the Court.

8  "[U]nder federal fee shifting statutes the lodestar approach is the guiding light in determining a

9  reasonable fee."  Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010)

10 (internal punctuation and citations omitted).  The Ninth Circuit has explained the lodestar approach

11 as follows:

12

13              The lodestar/multiplier approach has two parts.  First a court
             determines the lodestar amount by multiplying the number of hours
14           reasonably expended on the litigation by a reasonable hourly rate.
             The party seeking an award of fees must submit evidence
15           supporting the hours worked and the rates claimed.  A district court
             should exclude from the lodestar amount hours that are not
16           reasonably expended because they are excessive, redundant, or
             otherwise unnecessary.  Second, a court may adjust the lodestar
17           upward or downward using a multiplier based on factors not
             subsumed in the initial calculation of the lodestar. The lodestar
18           amount is presumptively the reasonable fee amount, and thus a
             multiplier may be used to adjust the lodestar amount upward or
19           downward only in rare and exceptional cases, supported by both
             specific evidence on the record and detailed findings by the lower
20           courts that the lodestar amount is unreasonably low or unreasonably
             high.

21 Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations and

22 punctuation omitted).

23       Under the lodestar method, the court will first determine the appropriate hourly rate for

24 the work performed, and that amount is then multiplied by the number of hours properly expended

25 in performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the discretion to

26 make adjustments to the number of hours claimed or to the lodestar, but is required to provide a

27 clear but concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir.

28 1992).  The lodestar amount is to be determined based upon the prevailing market rate in the

1   relevant community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

2       **a.      Reasonable hourly rate**

3       Counsel Tanya Moore ("Moore") has been in practice for over twenty years, with over ten

4   years spent almost exclusively in disability access litigation, and her current billing rate is $650.00.

5   (Moore Decl. ¶¶ 4-6.)  However, Moore is only seeking an hourly rate of $300.00 for her work on

6   this matter. (Id. ¶ 6.)  Moore is also seeking an hourly rate of $115.00 for the work of paralegals

7   Whitney Law ("Law") and Isaac Medrano ("Medrano"), despite normally billing at a higher rate in

8   the Northern District of California, where the firm is located.  (Id. at ¶¶ 10-11.)

9       The lodestar amount is to be determined based upon the prevailing market rate in the

10  relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of

11  the Eastern District of California.  "To inform and assist the court in the exercise of its discretion,

12  the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's

13  own affidavits—that the requested rates are in line with those prevailing in the community for

14  similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465

15  U.S. at 895 n.11.

16      This Court has previously found $300.00 per hour to be a reasonable rate for Moore.

17  Gilbert v. HBA Enterprises, Inc., No. 121CV01358JLTSAB, 2022 WL 2663761, at *17 (E.D. Cal.

18  July 11, 2022); Trujillo v. Taco Riendo, Inc., No. 121CV01446JLTSAB, 2022 WL 2236932, at

19  *16 (E.D. Cal. June 22, 2022);  Trujillo v. Harsarb, No. 121CV00342NONESAB, 2021 WL

20  3783388, at *14-15 (E.D. Cal. August 26, 2021); Trujillo v. Lakhani, No. 117CV00056LJOSAB,

21  2017 WL 1831942, at *8 (E.D. Cal. May 8, 2017).  Further, in the context of cases alleging

22  violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00

23  per hour within recent years.  See, e.g., Cervantes v. Vargas, No. 117CV00923LJOSKO, 2018 WL

24  2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of

25  experience   and   representation   in   275   ADA   actions);   Block v. Christian,   No.

26  116CV00650LJOSKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per

27  hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general

28  litigation and twelve years working on ADA cases).  Accordingly, the Court recommends that

1   Plaintiff receive the requested $300.00 per hour for the services of Moore.

2       The Court also recommends that Plaintiff receive the requested $115.00 per hour for the

3   services of the paralegals, as the Court has previously found the rate to be reasonable.  HBA

4   Enterprises, Inc., 2022 WL 2663761, at *17; Lakhani, 2017 WL 1831942, at *8; Harsarb, 2021

5   WL 3783388, at *6-7; see also Durham v. FCA US LLC, No. 2:17-CV-00596-JLT, 2020 WL

6   243115, at *9 (E.D. Cal. Jan. 16, 2020) ("Generally, paralegal rates within the Fresno Division of

7   the Eastern District range between $75 to approximately $150.00.").

8       **b.     Reasonable number of hours**

9       Counsel Moore billed 6.9 hours in this action.  (Moore Decl. ¶ 9.)  Paralegal Whitney Law

10  ("Law") billed a total of 5.8 hours.  (Declaration of Whitney Law ("Law Decl") ¶ 4, ECF No. 24-4

11  at 2.)  Paralegal Isaac Medrano ("Medrano") billed a total of 5 hours.  (Declaration of Isaac

12  Medrano ("Medrano Decl.") ¶ 4, ECF No. 24-5 at 2.)

13      As a preliminary matter, although Plaintiff's counsel expressly states she is not seeking to

14  recover costs associated with now-dismissed Defendant Cedar Plaza, the Court notes there are

15  multiple billing entries for fees related, in whole or in part, to Cedar Plaza.  (See Moore Decl. ¶ 12;

16  Ex. A, 24-3 at 2-5.)  Plaintiff provides no explanation either in the instant motion for default

17  judgment nor any of the declarations as to why billing entries expressly related to Cedar Plaza

18  should be reasonably imposed on CFIC.  Accordingly, as discussed in further detail below, the

19  Court finds the reduction of all hours related to Cedar Plaza is reasonable given Plaintiff

20  voluntarily dismissed Cedar Plaza.  (ECF No. 21.)  See Trujillo v. Taco Riendo, Inc., 2022 WL

21  2236932, at *17 (reducing all paralegal and attorneys' fees for work on a dismissed defendant's

22  case in a motion for default judgment).

23      Further, the Court has previously noted that "[b]ased upon the Court's familiarity with the

24  actions filed by Ms. Moore's firm in this court, the Court is aware that [Moore uses a] form

25  complaint [that] is substantially similar to dozens of other actions filed in this district," and

26  previously found "time billed [to be] excessive and duplicative and .5 hours would be a reasonable

27  amount of time for Ms. Moore to spend on preparing, researching, reviewing, and drafting the

28  complaint." Lakhani, 2017 WL 1831942, at *7.  Indeed here, with the exception of one paragraph

24

of the complaint alleging specific allegations regarding the itemized barriers, the paragraphs of the complaint essentially track word-for-word with prior complaints recently filed in this District by Moore and the same Plaintiff.  (Compare ECF No. 1 with Block v. Narwal, Case No. 1:22-cv-00597-ADA-EPG, ECF No. 1.)  Additionally, the motion for default judgment and the declarations attached are similarly substantially identical to previous motions for default judgment.  (Compare ECF No. 24-1 with Block v. Brar, Case No. 1:22-cv-01317-ADA-SAB, ECF No. 8.)[6]

Turning to the specific time entries, between June 22, 2022, and November 3, 2022, Moore expended 3.1 hours communicating with the client, with the private investigator, and performing other investigation and review in relation to the drafting and filing of the complaint.  (Ex. A, ECF No. 24-3 at 2.)  However, the Court notes the June 24, 2022 entry for "review[ing] initial research re *parties* involved and conflict check" fails to delineate between defaulted Defendant CFIC and dismissed Defendant Cedar Plaza.  (Id. (emphasis added).)  Accordingly, the Court divides 0.5 hours between the two defendants and only attributes 0.3 hours to the defaulted Defendant.  Thus, the Court calculates the entries by Moore from June 22, 2022, and November 3, 2022 attributable to CFIC to be 2.9 hours.  The Court finds 2.9 hours in relation to the initiation and filing of the complaint to be excessive, given the almost entirely routine nature of the complaint aside from paragraph 10, and shall reduce the total hours by 2.4, as 0.5 hours total for these tasks is reasonable.  See Trujillo, 2017 WL 1831942, at *7.

On November 3, 2022, Law expended 0.8 hours in pre-complaint filing research to identify "*defendants* and location for service," review other information related to the investigation, and revising the complaint.  (Ex. A, ECF No. 24-3 at 2 (emphasis added).)  This billing entry fails to delineate between identifying and locating defaulted Defendant CFIC and dismissed Defendant Cedar Plaza.  (Id.)  The Court therefore finds a reduction of 0.5 hours to be reasonable given Cedar Plaza was dismissed, and the similar tasks completed by Moore between June 22, 2022 and November 3, 2022.  Accordingly, the Court finds 0.3 hours to be reasonable for these tasks.

---

[6] The fact that both Law's and Medrano's declarations in the instant motion—which Moore asserts she reviewed (Moore Decl. ¶¶ 10, 11) and billed for such review (Ex. A, ECF No. 24-3 at 5)—state they represent "Plaintiff, Darren Gilbert," a person who is not a party in this action, demonstrates "the routine nature of these serial filings that simply fill in the blanks for different plaintiffs and defendants."  Taco Riendo, Inc., 2022 WL 2236932, at *18.

Between December 5, 2022 and January 3, 2023, Moore billed one hour to prepare and review the first attempted request for entry of default and supporting declarations.  (Ex. A, ECF No. 24-3 at 2-3.)[7]  Relatedly, between January 3, 2023 and January 11, 2023, Medrano billed 0.7 hours to draft the entry of default against CFIC, the supporting declarations, certificate of service, and letter after default was entered against CFIC.  (Id.)  However, Plaintiff's first entry and subsequent motion for default were denied against CFIC due to improper service.  (See ECF No. 14.)  Plaintiff provides no explanation as to why billing entries related to the first entry of default against CFIC should be reasonably imposed on CFIC.  See Stockfood America, Inc. v. Sequoia Wholesale Florist, Inc., Case No. 20CV03507DMR, 2021 WL 4597080, at *9 (N.D. Cal. June 22, 2021) (denying awarding Plaintiff fees for the time its attorneys spent on initial requests for default which were denied due to improper service because "Defendant should not be charged for Plaintiff's litigation errors").  The Court finds that it would be inappropriate to require CFIC to reimburse Plaintiff for the attorneys' fees and costs incurred in connection with Plaintiff's improper service and subsequent entry of default against CFIC.

Relatedly, between December 6, 2022 and December 9, 2022, Medrano billed 0.7 hours to draft the entry of default against now-dismissed defendant Cedar Plaza, supporting declarations, certificate of service, and letter after default was entered against Cedar Plaza.  (Ex. A, ECF No. 24-3 at 2-3.)  The Court finds a reduction of 0.7 hours appropriate as to former defendant Cedar Plaza as billed to CFIC because, as previously discussed, Plaintiff provides no explanation as to why any of the time entries attributable to dismissed Defendant Cedar Plaza should be levied upon the current Defendant.  See Trujillo v. Taco Riendo, Inc., 2022 WL 2236932, at *17.  In sum, the Court does not recommend awarding either Moore's aggregate 1.0 hour or Medrano's aggregate 1.4 hours spent on preparation of the first requests for entry of default judgment against CFIC and Cedar Plaza between December 5, 2022 to January 11, 2023.

Between February 21, 2023 and February 22, 2023, Medrano billed 1.6 hours drafting portions of the first motion for default judgment (ECF No. 11).  (Ex. A, ECF No. 24-3 at 3.)  On

---

[7] Again, Moore fails to delineate between the defaulted Defendant CFIC and dismissed Defendant Cedar Plaza in her billing entries between December 5, 2022 and January 3, 2023.  However, as discussed, the Court does not recommend awarding attorneys' fees for either request for entry of default judgment.

February 23, 2023, Law expended one hour on the motion for default judgment, including performing "research of public records to obtain evidence of current property and business ownership by *defendants* (in support of motion for default judgment)." (Id. (emphasis added).) Accordingly, the Court divides the 1.0 hour expended by Law equally between the two defendants and only attributes 0.5 hours to CFIC. Moore billed 1.4 hours on the motion for default judgment and preparing for the ultimately vacated hearing on the default judgment. (Id. at 3-4.) Because some of the time spent by Medrano on the motion was for clerical tasks, such as preparing a certificate of service and exhibits, as well as the fact that Law's billing entry states she drafted the "substantive portions" of the motion, the Court recommends a reduction to Medrano's hours from 1.6 hours to 0.8. (Id. at 3.) See Gilbert v. Mohamad, 2023 WL 3196312, at *11. Because the first motion for default judgment filed in this action is nearly identical to motions for default judgment filed by Moore in other actions before this court, the Court finds 1.5 hours of total paralegal time and 0.5 hours of Moore's time to be reasonable for drafting and review of the first motion for default judgment and associated materials. [8] See Trujillo v. Taco Riendo, Inc., 2022 WL 2236932, at *17 (finding 1.5 hours of total paralegal time and .5 hours of Moore's time to be reasonable for drafting the motion for default judgment and associated materials). Accordingly, the Court recommends reducing Moore's time from 1.4 hours to 0.6 hours; Law's time from 1.0 hour to 0.7 hours; and Medrano's time from 1.6 hours to 0.8 hours in Plaintiff's preparation of the motion for default judgment.

On April 24, 2023 and May 8, 2023, Law billed what appears to be duplicative entries in the amount 0.3 hours each to review the Court's April 24, 2023 findings and recommendations denying Plaintiff's initial motion for default judgment (ECF No. 14). (ECF No. 24-3 at 4.) Accordingly, the Court recommends reducing Law's duplicative entries by 0.3 hours.

---

[8] The Court reiterates the initial default judgment was denied due to (1) inadequate service as to Defendant CFIC and (2) failure to establish Cedar Plaza owns, leases, or operates Bad Buds Gas and Car Wash so as to be a properly named Defendant. (ECF No. 14.) Because Plaintiff re-filed the substantially same motion as the instant motion— only removing some mentions of former defendant Cedar Plaza and updating attachments and attorneys' fees, paralegal fees, and costs—the Court recommends granting a reduction of these hours, given Plaintiff only bills for the revisions to the instant motion rather than billing for re-drafting the motion. But see, Stockfood America, Inc., 2021 WL 4597080, at *9 (recommending deducting all hours billed by counsel in preparing previously denied motions for default judgment because defendants should not be charged for a plaintiff's litigation errors.) As discussed below, the Court recommends adjusting attorneys' fees on the revised motion for default judgment.

On May 24, 2023, Law billed 0.5 hours to review the Court's May 23, 2023 two-page order (1) granting Plaintiff an extension of time to complete service on Defendant CFIC until July 24, 2023 and (2) to either seek leave to amend the complaint to cure the defects with respect to Cedar Plaza or dismiss Cedar Plaza as a defendant in this action by July 24, 2023.  (ECF No. 17.)  While Law fails to delineate between the two defendants, her entry states she also conferred with the investigator regarding the status of service "on tenant," which the Court construes to refer to CFIC, rather than former defendant Cedar Plaza.  Based on this interpretation, the Court does not recommend a reduction of Law's May 24, 2023 entry.

The Court recommends reducing the 0.8 hours expended by Law on June 28, 2023, wherein she reviewed and researched whether there was a need to amend the complaint regarding dismissed Defendant Cedar Plaza.  (Ex. A, ECF No. 24-3 at 4.)  See Trujillo v. Taco Riendo, Inc., 2022 WL 2236932, at *17.  Relatedly, the Court finds the reduction of 0.3 hours expended by Medrano and 0.3 hours expended by Moore on July 24, 2023 in the preparation of the dismissal of Cedar Plaza to be appropriate, as again, there is no explanation as to why any of the time entries attributable to Cedar Plaza should be levied upon CFIC.  (Ex. A, ECF No. 24-3 at 5.)  Accordingly, the Court does not recommend awarding fees for these entries.

On June 27, 2023, Moore billed 0.3 hours to review a memo and instruct Medrano to renew what the Court construes as the request for entry of default judgment against CFIC.  (ECF No. 24-3 at 4.)  On June 29, 2023, Medrano billed 0.4 hours drafting the second request for clerk's entry of default against CFIC and supporting attorney declaration.  (Id.)  Law spent an identical 0.4 hours reviewing and revising the same request for entry of default judgment against CFIC.  (Id.)  Moore spent 0.3 hours on June 29, 2023 again reviewing and giving "attention to preparation of the 2nd request for entry of clerk's default" and the supporting declaration.  Requests for entry of default are not only simple filings that are based on a template that Moore has used in the past, see 1:22-cv-01317-ADA-SAB (ECF No. 5), but Plaintiff had already drafted a substantially identical request for entry of default against CFIC in this case in January 2023 (ECF No. 8).  Although the Court does not recommend awarding fees for the first request for the reasons previously discussed, the Court finds 0.8 aggregate hours of paralegal time and 0.6 hours of

28

1  Moore's time spent on one simple entry of default judgment to be excessive and duplicative.  The

2  Court thus recommends reducing Moore's aggregate time on the second request for entry of

3  default from 0.6 hours to 0.3 hours; Medrano's generally clerical work drafting the entry of default

4  from 0.4 hours to 0.2 hours; and Law's duplicative review from 0.4 hours to 0 hours.

5      Further, Law billed 1.6 hours to revise and finalize the instant motion for default judgment

6  between July 24, 2023 and August 30, 2023.  (ECF No. 24-3 at 5.)  Moore billed 0.5 hours on the

7  revised motion for default judgment.  (Id.)  As explained above, the Court has recommended 1.5

8  hours of total paralegal time and 0.5 hours of Moore's time is reasonable as to the time spent

9  drafting the initial motion for default judgment, which is essentially identical to the instant motion

10 for default judgment, minus most mentions of Defendant Cedar Plaza and updated attorneys' fees,

11 paralegal fees, and costs.  The Court finds awarding another 1.6 hours of paralegal time to a

12 substantially similar substantive motion with generally identical declarations and exhibits to be

13 excessive, given the first motion for default judgment was denied due to Plaintiff's litigation

14 errors.  See Stockfood America, Inc., 2021 WL 4597080, at *9.  Instead, the Court finds 0.5 hours

15 of Moore's time spent revising the instant motion for default judgment and associated materials to

16 be reasonable.  The Court notes the substantive portion of the instant motion is substantially

17 similar to not only the initial motion for default judgment, but other motions for default judgment

18 filed by Moore in this Court.  Because the Court has already recommended 1.5 hours of paralegal

19 time for drafting and compiling the first motion for default, the Court does not recommend

20 awarding an additional 1.6 hours of paralegal time to perform clerical work in removing some

21 mentions of dismissed defendant Cedar Plaza and exhibits related to Cedar Plaza.  Accordingly,

22 the Court recommends reducing Law's 1.6 hours and does not recommend reducing Moore's 0.5

23 hours spend in preparing and finalizing the instant motion.

24     The Court also recommends a reduction of seven miscellaneous entries by Medrano that

25 are purely clerical in nature: (1) November 4, 2022, wherein Medrano billed .3 hours "review[ing]

26 order setting scheduling conference to calendar hearing, set[ting] deadline to complete Rule 26

27 meeting, and deadline to file joint scheduling report" (Ex. A, ECF No. 24-3 at 2); (2) January 11,

28 2023, wherein Medrano spent 0.1 hours "review[ing] order to set deadline to file motion for

default judgment" (id. at 3); (3) February 24, 2023, wherein Medrano billed 0.1 hours to review the local rules to set deadlines for the opposition and reply motions for default judgment (id.); (4) February 28, 2023, wherein Medrano billed 0.1 to calendar the date for the hearing for the initial default judgment (id.); (5) April 24, 2023, wherein Medrano billed an aggregate 0.3 hours for reviewing the Court's April 24, 2023 findings and recommendations to calendar deadlines to file objections and draft certificates of service (id.); (6) May 23, 2023, wherein Medrano billed 0.2 hours for "Review[ing] order o [sic] set service deadline for complaint, calendar scheduling conference, and set deadline to file joint scheduling report (id.); and (7) July 31, 2023 wherein Medrano billed 0.2 hours to review the Court's two-page July 31, 2023 order vacating the scheduling conference and setting a deadline to file a motion for default judgment. (id. at 5.)  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); see also Block v. Narwal, Case No. 1:22-cv-00597-ADA-EPG, 2022 WL 17455502, at *11 (E.D. Cal. December 6, 2022) (awarding no fee for Medrano's boilerplate entry wherein he spent ".3 hours 'Review[ing] order setting scheduling conference to calendar hearing date, set deadline to complete Rule 26 call, and deadline to file joint scheduling report'" due to its clerical nature.).  Because Medrano's seven entries consist of purely clerical work or secretarial tasks, the Court recommends no fee be awarded for his aggregate 1.3 hours between November 4, 2022 and July 31, 2023.

Accordingly, totaling the above reductions, the Court finds that a reduction of 5 hours is appropriate for Moore, a reduction of 4 hours is appropriate for Medrano, and a reduction of 3.9 hours is appropriate for Law.

The Court shall add 0.1 hours for the time Moore expended attending the hearing via videoconference, which lasted less than five (5) minutes.

Accordingly, the Court finds that paralegal Whitney Law reasonably expended 1.9 hours in this litigation; paralegal Isaac Medrano reasonably expended one hour in this litigation; and counsel Tanya Moore reasonably expended 2 hours in this litigation.

**c.    Reasonable Attorneys' Fee Award**

The Court finds that: (1) counsel Moore reasonably expended 2.0 hours in this action at a

reasonable rate of $300.00 per hour, for a total of $600.00; (2) paralegal Whitney Law reasonably expended 1.9 hours in this action at a reasonable rate of $115.00 per hour, for a total of $218.50; and paralegal Isaac Medrano reasonable expended 1 hour in this litigation at a reasonable rate of $115.00 per hour, for a total of $115.00.

Accordingly, the Court recommends that Plaintiff be awarded attorneys' fees in the amount of $933.50, reduced from the requested amount of $3,312.00.

### d.     Costs

Both the ADA and Unruh Act authorize the award of costs for an action.  See 42 U.S.C. § 12205; Cal. Civ. Code § 52(a).  Plaintiff seeks costs of $402.00 for filing fees; $115.30 for the November 17, 2022 service expense; $115.05 for the May 22, 2023 service expense; and $199.58 for a consultant that completed investigation prior to filing of the complaint.  (Moore Decl. ¶¶ 12-13; Ex. B, ECF No. 24-3 at 7-10; Ex. C, ECF No. 24-3 at 11-12; Ex. H, ECF No. 24-3 at 24.)  The Court finds the $402.00 filing fee; $115.05 May 22, 2023 service expense; and $199.58 investigative work to be reasonable expenses.  However, the Court finds that it would be inappropriate to require CFIC to reimburse Plaintiff for the costs incurred in connection with Plaintiff's improper service on CFIC on November 17, 2022 in the amount of $115.30.  (Ex. B, ECF No. 24-3 at 7.)  Plaintiff provides no explanation nor authority either in the instant motion for default judgment as to why costs for improper service should be reasonably imposed on CFIC. Instead, Moore's declaration explains "[t]here are two invoices, reflecting multiple attempts that were required to properly effect service."  (Moore Decl. ¶ 12.)  However, the Court does not construe Plaintiff's November 17, 2022 attempt to serve CFIC as Plaintiff acting with, for example, due diligence to serve CFIC; rather, the Plaintiff was "required" to make "multiple attempts" to serve Defendant due to what the Court has already found was an initial erroneous service on CFIC.  (ECF No. 14 at 11-17.)  As previously discussed, "Defendant should not be charged for Plaintiff's litigation errors."  Stockfood America, Inc., 2021 WL 4597080, at *9. Accordingly, the Court recommends a reduction of $115.30 and awarding Plaintiff a total of $716.63 in costs.

///

# V.

## RECOMMENDATION AND ORDER

The Eitel factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

Based upon the foregoing, the Court HEREBY RECOMMENDS that:

1.    Plaintiff's motion for default judgment be GRANTED;

2.    Plaintiff be AWARDED statutory damages in the amount of $4,000.00;

3.    Plaintiff be AWARDED reduced attorneys' fees in the amount of $933.50;

4.    Plaintiff be AWARDED costs in the amount of $716.63; and

5.    Plaintiff be GRANTED an injunction requiring Defendant, within six (6) months of entry of the order, to provide disability access by making the following modifications to the property known as Bad Buds Gas and Car Wash, located at 6777 North Cedar Avenue in Fresno, California 93710 ("the Facility"), such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, by:

   i.   Providing a properly configured and identified accessible parking stall with adjacent access aisle; and

   ii.  Providing and maintaining a properly configured accessible route of travel from the designated accessible parking to the Facility entrance.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)

1    (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

2         Further, Plaintiff is HEREBY ORDERED to serve a copy of this findings and

3    recommendations on Defendants within three (3) days of entry.

4

5    IT IS SO ORDERED.

6    Dated:   **November 8, 2023**                    _____

                                                      UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28